UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | |
|---|---|
| **ERICA EDWARDS**<br>1596 Pin Oak Drive<br>Waldorf, Maryland 20601<br><br>Plaintiff,<br><br>v.<br><br>**MARYLAND CRIME VICTIMS'**<br>**RESOURCE CENTER, INC.**<br>1001 Prince George's Boulevard, Suite 750<br>Upper Marlboro, Maryland 20774<br><br>SERVE:    Kurt W. Wolfgang<br>           Resident Agent<br>           1175 Port Tobacco Road<br>           Nanjemoy, Maryland 20662<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) Civil Action No. _____<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## **COMPLAINT**

COMES NOW the Plaintiff, **ERICA EDWARDS**, and for her Complaint against

Defendant **MARYLAND CRIME VICTIMS' RESOURCE CENTER, INC.** and states the

following:

### **Parties**

1.  At all relevant times, Plaintiff Erica Edwards ("Plaintiff" or "Ms. Edwards") was a

Maryland resident.

2.  Defendant Maryland Crime Victims' Resource Center, Inc. ("MCVRC") is a

Maryland corporation with its principal place of business located at 1001 Prince George's Blvd.,

Suite 750, Upper Marlboro, Maryland. At all relevant times, MCVRC was aware of, ratified and

confirmed the actions of its employees, agents, subcontractors and/or representatives.

## Jurisdiction

3.   The Court has subject matter jurisdiction over the federal subject matter of this action

pursuant to 28 U.S.C. § 1331.  The Court has jurisdiction over the remaining state common law

subject matter of this action pursuant to 28 U.S.C. § 1367(a).

4.   This Court has personal jurisdiction over Defendant because, *inter alia,* Defendant is

incorporated, and conducts business, in Maryland.

5.   Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2).

## Exhaustion of Administrative Remedies

6.   On or about November 25, 2020, Ms. Edwards submitted her Charge of Discrimination

with the Maryland Commission on Civil Rights ("MCCR").  The Charge of Discrimination was

cross-filed with the Equal Employment Opportunity Commission on or about December 3,

2020 and assigned EEOC No. 12F-2021-00142.

7.   On May 4, 2022, after more than 180 days had elapsed, EEOC issued its Notice of Right

to Sue letter to Ms. Edwards.

## Factual Background Common to All Counts

8.   Ms. Edwards is a well-established, respected member of the grant management

community.  She has a distinguished record of academic, professional and personal achievement that

highlights her drive, organization, enthusiasm and creativity.

9.   Ms. Edwards began working as Director of Finance and Operations at MCVRC on August

20, 2018.

10.  Approximately one (1) month after her start date, she discovered illegal activity

(embezzlement) by John E. Bush, her predecessor.  Mr. Bush worked for MCVRC from June 2017 until July 2018.  MCVRC was aware of his past misconduct but allowed him to remain employed.

11. Kurt Wolfgang (Caucasian) was named Interim Executive Director on or about August 19, 2019.  Upon information and belief, he had not been an Executive Director at a nonprofit prior to his appointment at MCVRC.

12. After being named Interim Executive Director, Mr. Wolfgang authorized that one of his longtime friends, Catherine Owen (Caucasian), a Victim Advocate at MCVRC, be given a new title as Executive Assistant and a pay increase of $12,000 for small additional administrative duties she was supposed to (but did not) undertake.

13. After nearly one year as Interim Executive Director, Mr. Wolfgang asked the Board at its annual meeting to allow him to stay for another year.  Mr. Wolfgang solicited employees to write favorable letters to the Board on his behalf during the weekly staff meeting.  To one staff member, he promised a Deputy Director position and an increase in salary.

14. MCVRC's source of revenue overwhelmingly is secured through grant funding.

15. From at least September 2016 through September 2020, MCVRC received grant funding, and was a grant recipient, under the federal Victims of Crime Act ("VOCA") Grant Program. VOCA is administered through the Maryland Governor's Office of Crime Control and Prevention ("Maryland Governor's Office") and funded by the United States Department of Justice, Office of Justice Programs, Office of Victims of Crime.

16. Applicants for this funding are required to apply for grant funding through the Maryland Governor's Office web-based application process.  Thereafter, the Maryland Governor's Office assesses the merits of the proposed program.  The Maryland Governor's Office distributes the awarded funds after submission into its Grant Management System.

17. The VOCA Grant Program expressly identifies "Allowable Costs" and "Unallowable Costs"

at Section VIII, parts B and C. "Unallowable Costs" include "Lobbying/administrative advocacy" and "Fundraising." The grant also prohibits billing time which is not spent on that specific program.

18. The Department of Justice's Financial Grants Guide also contains a provision for unallowable costs such as lobbying and fundraising

19. Beginning early in his tenure as Interim Executive Director and continuing, Mr. Wolfgang engaged in financial improprieties regarding VOCA. For example, he wanted to pay his friend who owned Tobin Communications $20,000 to produce informational YouTube videos regarding MCVRC's client stories and services. Upon information and belief, MCVRC received funds from the VOCA Grant Program in September 2019 for this cost, but these videos were never produced and the funds were not returned. Ms. Edwards repeatedly disclosed to Mr. Wolfgang that the videos needed to be completed because the funds had been received and not returned from the VOCA grant. She disclosed that it was a grant violation not to do so.

20. Fearing that Ms. Edwards would disclose his improper acts to others, Mr. Wolfgang directed Ms. Edwards to provide Ms. Owen (who had no Director of Finance or grants management experience) with access to MCVRC's QuickBooks file so Ms. Owen could directly provide Mr. Wolfgang with MCVRC's financial reports. Ms. Edwards was not allowed to access MCVRC accounts online. Further, Mr. Wolfgang directed Ms. Owen to open all mail – even material directed to Ms. Edwards.

21. Ms. Edwards' objections were ignored by Mr. Wolfgang.

22. Directing Ms. Owen to usurp a greater financial role, while excluding Ms. Edwards from her oversight role, allowed Mr. Wolfgang to continue to engage in improper actions.

23. Mr. Wolfgang (wrongly) insisted that grants could be written by attorneys without Board approval and the Board could be notified after the grant was awarded. At least one grant was submitted without an approved budget or review from the Director of Legal Services.

24. Prior to the COVID pandemic and thereafter, Mr. Wolfgang and Ms. Owen were rarely in the office to perform their work. Mr. Wolfgang and Ms. Owen submitted timesheets for the VOCA grant to be billed for their salary despite their lack of onsite attendance. Their respective inability to work remotely and access MCVRC's network precluded each from providing services. On several occasions beginning in Spring 2020, Ms. Edwards disclosed these facts to the Board of Directors Chairperson Debra Tall who relayed Ms. Edwards' disclosure to Mr. Wolfgang.

25. The VOCA grant also prohibits the billing of time spent unrelated to its programs to receive funds. Mr. Wolfgang improperly billed the VOCA grant for time he spent lobbying the Maryland General Assembly, another unallowable cost. Ms. Edwards disclosed to Ms. Tall that Mr. Wolfgang was billing his lobbying time to the VOCA Grant.

26. Mr. Wolfgang misused VOCA grant funds by billing time to be paid when he was working on his private law practice matters. At least one MCVRC employee was performing work for Mr. Wolfgang that was not MCVRC related, but rather, benefitted Mr. Wolfgang's personal law practice. For this work, the VOCA grant was billed even after Ms. Edwards disclosed to Ms. Tall that such billing was impermissible under the VOCA grant. Ms. Edwards disclosed to Ms. Tall that this billing was occurring around March 2020.

27. In July 2019, Ms. Owen had been injured while attending a proceeding in Charles County. Though she "returned to work" before her recommended return date, she was rarely in the office to perform the office management duties that her new position required – but still was paid from VOCA grant funds. Instead, she would task other workers with her duties. Mr. Wolfgang knew of, but ignored, this misconduct and lack of performance. Ms. Edwards disclosed to Ms. Tall that Ms. Owen was getting paid but not working. The funding source to pay Ms. Owen was grant funding.

28. A Black MCVRC employee complained about having to do Ms. Owen's work after the employee assumed a Victim Advocate position and Ms. Owen was tasked only completing

administrative work. Thereafter, this employee was tasked with both roles (Ms. Owen did not understand how to properly use the software) and subsequently resigned because she was not given a pay raise despite performing both jobs. Mr. Wolfgang criticized her for wanting a pay raise for doing more work and said she was not as qualified as Ms. Owen.

29. MCVRC lawyers were assigned to handle cases within particular jurisdictions in Maryland. With the knowledge and approval of Mr. Wolfgang, MCVRC lawyers falsely billed the VOCA grant. Specifically, MCVRC lawyers assigned to jurisdictions with smaller caseloads inflated the number of hours worked and falsely billed the VOCA grant for time allegedly worked. Ms. Edwards disclosed that this billing practice violated the VOCA grant to both Mr. Wolfgang and Ms. Tall in Summer 2020. However, no changes in billing practice was made.

30. In August 2020, Ms. Edwards sacrificed most of her vacation time to prepare final grant reports. Ms. Edwards found a $50,000 grant for MCVRC administered and funded by the Maryland Department of Housing and Community Development ("Maryland Grant"). The Maryland Grant was to fund a Victim's Advocate position.

31. During this time, another friend of Mr. Wolfgang's, Jennifer Abell (Caucasian), was furloughed from her position with the March of Dimes. Mr. Wolfgang stated that her job was a Fundraiser position, that MCVRC needed a Fundraiser and that Ms. Abell should be hired. Ms. Edwards disclosed to Mr. Wolfgang that MCVRC could not use the Maryland Grant funds to hire Ms. Abell as a Fundraiser. Ms. Edwards again disclosed her concerns to Ms. Tall that Mr. Wolfgang was attempting to misuse grant funds.

32. When the Board required that the position be advertised and candidates be interviewed, Mr. Wolfgang bypassed this directive by creating an Indeed profile and writing an ad which benefitted Ms. Abell. He forwarded only 10 resumes for review (not all resumes that needed to be kept for record-keeping purposes), and the only one with Fundraising experience belonged to Ms. Abell.

Further, he ignored Ms. Edwards when she asked about interviewing other candidates or changing the job description.

33. Ms. Edwards disclosed additional grant fund violations involving Mr. Wolfgang and Ms. Owen. On September 11, 2020 relating to a lawsuit focused on Ms. Owen's worker's compensation claim, Mr. Wolfgang requested that Ms. Edwards pay Ms. Owen from the VOCA Grant for her time at the doctor's office, time at the workers compensation hearing, and time gathering documents for her hearing. Ms. Edwards disclosed to Mr. Wolfgang that these expenses could not be covered with any grant funds and volunteered to contact MCVRC's insurance company regarding potential coverage.

34. After contacting the insurance company, Ms. Edwards informed Mr. Wolfgang that the expenses were not worker's compensation expenses, but that Ms. Owen could make up her time or use personal leave. Instead, after yelling at Ms. Edwards, Mr. Wolfgang approved Administrative Leave, even after Ms. Edwards repeated that the use of grant funds was not permitted.

35. On September 14, 2020, at a Director's meeting, Mr. Wolfgang discussed hiring for the Fundraising position he had advertised and that he wanted to use the Maryland Grant funds Ms. Edwards had secured. Ms. Edwards told him that those funds were required to be used for a Victims Advocate position. Mr. Wolfgang insisted there were available funds for a Fundraising position. Ms. Edwards again reminded Mr. Wolfgang that fundraising was not an allowable cost and the candidate could perform marketing and business development but not fundraising.

36. At a staff meeting the next day, Mr. Wolfgang warned that no one was to contact the Board for any reason. Ms. Edwards questioned a possible conflict of interest if an issue could not be raised with him and reminded Mr. Wolfgang of the Board-approved Handbook policy regarding issue escalation.

37. After the meeting, Mr. Wolfgang accused who Ms. Edwards of being disrespectful. He

dismissed Ms. Edwards' disclosures about funding and grant violations as her being "easily angered." He also questioned her continued employment if she did not agree with him.

38. During her tenure, Ms. Edwards was the only Black Director at MCVRC.

39. Regularly, Mr. Wolfgang was more combative with Ms. Edwards than with other co-workers. In Directors meetings, he would use an irritated tone with Ms. Edwards but would be agreeable with her Caucasian colleagues. Ms. Edwards is the only employee he characterized as "angry." Ms. Owen gratuitously expressed that she was "afraid" of Ms. Edwards.

40. Of particular concern were the comments and re-posts contained in Mr. Wolfgang's social media sites when compared to MCVRC's stated mission.

41. Mr. Wolfgang is aware of Ms. Edwards' BLM support. In his Facebook posts, Mr. Wolfgang espoused racial hatred; he wrote and endorsed anti-Black Lives Matter posts as well as racial/hostile comments. For instance, Mr. Wolfgang equated BLM with a domestic terror group, endorsed the use of guns in response to protests, equated protestors with "welfare" recipients and encouraged people to "start fighting" the "culture war" when choosing "[which]side are you one." **EXHIBIT 1.**

42. Mr. Wolfgang vocalized his disdain for Ms. Edwards (and others) because she was not like him. In stark contrast to his social media posts, Mr. Wolfgang deceptively wrote a solidarity message regarding Black Lives Matter for MCVRC and presented it to the staff and the Board.

43. In December 2019, Mr. Wolfgang and Ms. Edwards interviewed attorneys for open positions. During one of the interviews, Mr. Wolfgang advised a Caucasian candidate who was looking to relocate to Southern Maryland that she should not move to Prince George's County or Charles County but should consider St. Mary's County or Calvert County. The implication was clear – the former areas were unsafe because of the higher Black population. Ms. Edwards lives in Waldorf, Maryland.

44. Another candidate was of Mexican origin with English as her second language. Although

she was hired, Mr. Wolfgang stated that she would not be capable of performing the work because English was her second language.  Ms. Edwards expressed her disagreement.

45. Prior to her termination, Mr. Wolfgang worked to minimize Ms. Edwards' experience, ability and participation at MCVRC.  For instance, he contacted Kathleen Callan (Caucasian), an MCVRC staff attorney at the beginning of her training in July 2020, rather than Ms. Edwards, for information about MCVRC's finances and invoices.  Regularly, he relied upon Pauline Mandel (Caucasian), MCVRC's Director of Legal Services, to explain the particulars of Ms. Edwards' job and would call Ms. Mandel directly to discuss many issues but refused to speak to Ms. Edwards, even after Ms. Mandel told him to call Ms. Edwards.

46. Mr. Wolfgang asked Ms. Owen to review the monthly profit and loss reconciliation reports – a role tasked to Ms. Edwards.  He would develop a list of "problems" when he and Ms. Owen reviewed these reports because Ms. Owen was unable to provide answers.  When asked, Ms. Edwards would explain these "problems" and request that time be set aside to review reports with Mr. Wolfgang each month.  But this review never occurred; instead, Mr. Wolfgang continued to ask Ms. Callan.

47. Mr. Wolfgang did not provide Ms. Edwards with adequate workplace resources.  For example, Mr. Wolfgang never encouraged Ms. Owen to help Ms. Edwards and directed that Ms. Edwards was not to supervise her even after Ms. Edwards notified him that she was not receiving adequate assistance.  But in September 2020, Mr. Wolfgang ensured that Ms. Owen was available to assist Ms. Abell concerning administrative matters, and he rehired Sharon Jacob (Caucasian) as a contractor to help Ms. Abell perform her job duties.

48. On the evening of Friday, September 18, Mr. Wolfgang notified Ms. Edwards that her employment was terminated but did not provide an alleged reason.  Mr. Wolfgang did not terminate any other Director.

49. He offered to let her stay through the end of the pay period if Ms. Edwards agreed to help Ms. Jacob with financial duties through the end of September.  Later that evening Mr. Wolfgang sent a message to the staff informing them that Ms. Edwards had been terminated.  The next day he announced that he had hired Jennifer Abell as the Director of Finance and Operations (far less experience than Ms. Edwards) and that Ms. Jacob would help her.

50. Also that evening, Mr. Wolfgang called MCVRC's attorneys to notify each that Ms. Edwards had been terminated.  On at least one occasion, Mr. Wolfgang falsely stated that Ms. Edwards had been terminated for performance issues.

51. Ms. Edwards never received a warning about any disciplinary or alleged performance issues. Her most recent performance audits which was completed in December 2018 and found zero deficiencies.

52. After her termination, Mr. Wolfgang told MVCRC personnel that Ms. Abell was as qualified as Ms. Edwards and misrepresented Ms. Edwards' educational background in making that comparison.

## COUNT I
### Title VII - Violation of 42 U.S.C. §2000e-2(a)(1)
### Discrimination

53. The factual allegations contained in paragraphs 1-52 are hereby incorporated by reference as if fully set forth herein.

54. By and through its conduct, Defendant did not afford Plaintiff equal rights under the law under the law and violated 42 U.S.C. §2000e-2(a)(1) by discriminating against Plaintiff on the basis of her race and/or color.

55. Plaintiff is a member of a protected group.

56. Defendant discriminated against Plaintiff in the termination of her employment on the basis of her protected group status.

57. There is no legitimate, non-discriminatory reason for Defendant's actions.  Any purported reason offered is pretextual to mask unlawful discrimination.

58. As a direct and proximate result of Defendant's acts and omissions, Ms. Edwards has suffered substantial damages in an amount of not less than $500,000.00, which will be proven at trial.

WHEREFORE, Plaintiff demands judgment in her favor and against Defendant for damages in an amount not less than $500,000.00, the total amount of which to be proven at trial, pre- and post-judgment interest as permitted by law, punitive damages in the amount of $500,000.00, reasonable attorney's fees, costs, and such other and further relief as the Court deems just and proper.

**COUNT II**
**Violation of 42 U.S.C. §1981**
**Discrimination**

59. The factual allegations contained in paragraphs 1-52 are hereby incorporated by reference as if fully set forth herein.

60. By and through its conduct, Defendant did not afford Plaintiff equal rights under the law and violated 42 U.S.C. §1981 by discriminating against Plaintiff on the basis of her race and/or color.

61. Plaintiff is a member of a protected group.

62. Defendant discriminated against Plaintiff in the termination of her employment on the basis of her protected group status.

63. There is no legitimate, non-discriminatory reason for Defendant's actions.  Any purported reason offered is pretextual to mask unlawful discrimination.

64. As a direct and proximate result of Defendant's acts and omissions, Ms. Edwards has suffered substantial damages in an amount of not less than $500,000.00, which will be

proven at trial.

WHEREFORE, Plaintiff demands judgment in her favor and against Defendant for damages in an amount not less than $500,000.00, the total amount of which to be proven at trial, pre- and post-judgment interest as permitted by law, punitive damages in the amount of $500,000.00, reasonable attorney's fees, costs, and such other and further relief as theCourt deems just and proper.

## COUNT III
### Violation of MD Human Rights Act
### State Gov't Article, §20-601 *et seq.*

65. The factual allegations contained in paragraphs 1-52 are hereby incorporated by reference as if fully set forth herein.

66. By and through its conduct, Defendant did not afford Plaintiff equal rights under the under the law and violated Maryland State Government Article, §20-601 *et seq.* by discriminating against Plaintiff on the basis of her race and/or color.

67. Plaintiff is a member of a protected group.

68. Defendant employs 15 or more employees and discriminated against Plaintiff in the termination of her employment on the basis of her protected group status.

69. There is no legitimate, non-discriminatory reason for Defendant's actions. Any purported reason offered is pretextual to mask unlawful discrimination.

70. As a direct and proximate result of Defendant's acts and omissions, Ms. Edwards has suffered substantial damages in an amount of not less than $500,000.00, which will be proven at trial.

WHEREFORE, Plaintiff demands judgment in her favor and against Defendant for damages in an amount not less than $500,000.00, the total amount of which tobe proven at trial, pre- and post-judgment interest as permitted by law, punitive damages in the amount of

$500,000.00, reasonable attorney's fees, costs, and such other and further relief as the Court deems just and proper.

### COUNT IV
### Title VII - Violation of 42 U.S.C. §2000e *et seq.*
### Hostile Work Environment

71. The factual allegations contained in paragraphs 1-52 are hereby incorporated by reference as if fully set forth herein.

72. As set forth herein, Defendant created and sustained a hostile work environment for Ms. Edwards and for the "reasonable person." Defendant's conduct was severe, pervasive, physically threatening, humiliating and unreasonably interfered with Ms. Edwards' work performance.

73. There is no legitimate, non-discriminatory reason for Defendant's actions. Any purported reason offered is pretextual to mask the hostile work environment created and sustained by Defendant.

74. As a direct and proximate result of Defendant's acts and omissions, Ms. Edwards has suffered substantial damages in an amount of not less than $500,000.00, which will be proven at trial.

WHEREFORE, Plaintiff demands judgment in her favor and against Defendant for damages in an amount not less than $500,000.00, the total amount of which to be proven at trial, pre- and post-judgment interest as permitted by law, punitive damages in the amount of $500,000.00, reasonable attorney's fees, costs, and such other and further relief as theCourt deems just and proper.

### COUNT V
### Violation of False Claims Act
### 31  U.S.C. §3730(h) - Retaliation

75. The factual allegations contained in paragraphs 1-52 are hereby incorporated by reference as if fully set forth herein.

76. The False Claims Act protects employees, contractors, and agents who engage in protected activity from retaliation in the form of their being "discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment."

77. Ms. Edwards served as an employee, contractor and/or agent of MCVRC, a federal grant recipient.

78. Through Ms. Edwards' acts and disclosures, she tried to prevent one or more violations of the False Claims Act by Defendant, including false claims for services not provided, submission of false records, and present/cause to be presented false and/or fraudulent claims for payment and/or approval.  Through Ms. Edwards' acts and disclosures, sheengaged in protected activity.

79. Ms. Edwards had an objectively reasonable belief that Defendant was violating, or would soon violate, the False Claims Act.

80. As a result of his acts and disclosures, Ms. Edwards was terminated from employment at MCVRC.

81. As a result of Defendant's acts and omissions, Ms. Edwards has suffered substantial damages in an amount of not less than $1,000,000.00, which will be proven at trial.

WHEREFORE, Plaintiff demands judgment in her favor and against Defendant for damages in an amount not less than $1,000,000.00, the total amount of which to be proven at trial, double back pay (lost wages and benefits) with interest, plus pre- and post- judgment interest as permitted by law, emotional distress and other non-economic harm from theretaliation, reimbursement of reasonable attorney's fees, costs, and such other and further relief as the Court deems just and proper.

## COUNT VI
### Violation of Maryland False Claims Act
### General Provisions Article, §8-107 (Retaliation)

82. The factual allegations contained in paragraphs 1-52 are hereby incorporated by reference as if fully set forth herein.

83. The Maryland False Claims Act (*Annotated Code of Maryland,* General Provisions Article, §8-107) protects employees, contractors and agents who engage in protected activity from retaliation in the form of being "discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment."

84. The Maryland False Claims Act prohibits retaliation against an employee or a contractor who, *inter alia*, initiates or cooperates with an investigation pursuant to the statute, discloses information regarding misconduct that violates the statute, provides testimony before a public body, and/or refuses to participate in conduct that violates the Maryland False Claims Act.

85. Through Ms. Edwards' acts and disclosures, she tried to prevent one or more violations of the Maryland False Claims Act by Defendant, including false claims for services not provided, submission of false records, and present/cause to be presented false and/or fraudulent claims for payment and/or approval. Through Ms. Edwards' acts and disclosures, sheengaged in protected activity.

86. Ms. Edwards had an objectively reasonable belief that Defendant was violating, or would soon violate, the Maryland False Claims Act.

87. As a result of his acts and disclosures, Ms. Edwards was terminated from employment at MCVRC.

88. As a result of Defendant's acts and omissions, Ms. Edwards has suffered substantial damages in an amount of not less than $1,000,000.00, which will be proven at trial.

WHEREFORE, Plaintiff demands judgment in her favor and against Defendant for

damages in an amount not less than $1,000,000.00, the total amount of which to be proven at trial, punitive damages in the amount of $500,000.00, reinstatement to the same seniority status held before the retaliatory action; reinstatement of full fringe benefits and seniority rights; two times the amount of lost wages, benefits, and other remuneration, including any interest accumulated; plus pre- and post- judgment interest as permitted by law, emotional distress and other non-economic harm from the retaliation, reimbursement of reasonable attorney's fees, costs, and such other further relief as the Court deems just and proper.

## COUNT VII
## (Wrongful Termination)

89. The factual allegations contained in paragraphs 1-52 are hereby incorporated by reference as if fully set forth herein.

90. Ms. Edwards was terminated from employment at MCVRC, the termination violated a clear mandate of public policy and there was a nexus between Ms. Edwards' conduct and Defendant's decision to terminate her employment.

WHEREFORE, Plaintiff demands judgment in her favor and against Defendant for damages in an amount not less than $1,000,000.00, the total amount of which to be proven at trial, punitive damages in the amount of $500,000.00, any interest accumulated; plus pre- and post-judgment interest as permitted by law, reimbursement of reasonable attorney's fees, costs, and such other further relief as the Court deems just and proper.

### _Jury Demand_

Plaintiff demands a trial by jury to the maximum extent permitted by law.

Respectfully submitted,

Marc E. Pasekoff, Esquire
SHANNON MULLINS & WRIGHT
124 S. Royal Street
Alexandria, Virginia 22314
Tel: 571-620-1930
Fax: 571-321-6587
Email: mpasekoff@smw.law