IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | |
|---|---|
| ERICA EDWARDS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Civil Case No.: 8:22-CV-01172-TJS |
| | ) |
| MARYLAND CRIME VICTIMS | ) |
| RESOURCE CENTER, INC. | ) |
| | ) |
| Defendant. | ) |
| | ) |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS
MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Defendant Maryland Crime Victims Resource Center, Inc. ("MCVRC" or "Defendant"), by and through undersigned counsel, and pursuant to FED. R. CIV. P. 12(b)(6), hereby submits the following Memorandum of Points and Authorities in Support of its Motion to Dismiss Plaintiff Erica Edwards ("Ms. Edwards" or "Plaintiffs")' Complaint in its entirety and with prejudice for the reasons set forth below.

**INTRODUCTION**

Plaintiff's lawsuit is subject to dismissal for a variety of reasons. First, Plaintiff's Title VII, corresponding Maryland Human Rights Act, and wrongful termination claims should be dismissed because Plaintiff fails to allege sufficient facts that suggest or even imply that her termination was the result of any discriminatory animus. Second, with respect to Plaintiff's hostile work environment claim, the Complaint is devoid of allegations sufficient to demonstrate the existence of severe or pervasive conduct based on race in the workplace. Third, Plaintiff asserts retaliation pursuant to the False Claims Act and corresponding Maryland False Claims Act, yet fails to allege

any nexus between her alleged protected activity and her termination or any evidence of investigative efforts beyond mere reporting of alleged misconduct to her superiors. Rather, Plaintiff's Complaint consists only of legal conclusions, speculation, and unreasonable inferences that do not bring her claims within the realm of plausibility, and thus, are subject to dismissal.

For these reasons, as expanded upon *infra*, Plaintiff's Complaint should be dismissed with prejudice.

## BACKGROUND AND FACTUAL ALLEGATIONS[1]

Plaintiff, an African American female, was formerly employed by Defendant MCVRC in the role of Director of Finance and Operation. Compl. ¶¶ 9, 48. Throughout her Complaint, Plaintiff makes a myriad of allegations regarding Defendant's purported misuse of Victims of Crime Act ("VOCA") Grant funds. *See generally* Compl. Plaintiff maintains that in her efforts to disclose these violations, she was subject to discrimination due to her race, when Executive Director Kurt Wolfgang ("Mr. Wolfgang") accused her of "being disrespectful" and "easily angered," and often was "more combative" with Plaintiff than her Caucasian colleagues. Compl. ¶¶ 37, 39. Additionally, Plaintiff alleges that Mr. Wolfgang advised a candidate during an interview to avoid re-locating to Prince George's County or Charles County with the "implication" that the candidate should avoid a county with a "higher Black population," (Compl. ¶ 43), and expressed that a new hire "of Mexican origin" would have a difficult time with the work because "English was her second language." Compl. ¶ 44. On September 18, 2020, Plaintiff was terminated by Defendant. Compl. ¶ 48.

---

[1] Defendant denies the factual allegations of discrimination contained in the Complaint. However, on a motion to dismiss, a moving party must accept the opposing party's allegations of fact as stated, regardless of veracity.

**STANDARD OF REVIEW**

FED. R. CIV. P. 12(b)(6) provides for dismissal where an action fails to state a claim upon which relief can be granted. "To survive a motion to dismiss, a Complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. To that end, "the court need not accept the [plaintiff's] legal conclusions drawn from the facts, nor need it accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 616 n.26 (4th Cir. 2009).

In reviewing a Rule 12(b)(6) motion, "a court 'must accept as true all of the factual allegations contained in the complaint,' and must 'draw all reasonable inferences [from those facts] in favor of the plaintiff.'" *Retfalvi v. United States,* 930 F.3d 600, 605 (4th Cir. 2019) (alteration in *Retfalvi)* (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.,* 637 F.3d 435, 440 (4th Cir. 2011)); *see Semenova v. Md. Transit Admin.,* 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.,* 791 F.3d 473, 484 (4th Cir. 2015). However, "a court is not required to accept legal conclusions drawn from the facts." *Retfalvi,* 930 F.3d at 605 (citing *Papasan v. Allain,* 478 U.S. 265, 286 (1986)); *see Glassman v. Arlington Cty.,* 628 F.3d 140, 146 (4th Cir. 2010). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy

sought. *A Society Without a Name v. Virginia,* 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied,* 566 U.S. 937 (2012).

The Supreme Court has explained that the "*prima facie* case under *McDonnell Douglas* [*Corp. v. Green,* 411 U.S. 792 (1973)] . . . is an evidentiary standard, not a pleading requirement." Further, the Court stated that it had "never indicated that the requirements for establishing a *prima facie* case under *McDonnell Douglas* also apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss." *Swierkiewicz v. Sorema,* 534 U.S. 506, 511 (2002). Thus, the Court said: "[A]n employment discrimination plaintiff need not plead a *prima facie* case of discrimination . . . ." *Id.* at 515; *see also McCleary-Evans v. Md. Dep't of Transp.,* 780 F.3d 582, 584 (4th Cir. 2015), *cert. denied,* 557 U.S. 1138 (2016). However, the Fourth Circuit indicated that although a plaintiff "need not plead facts sufficient to establish a *prima facie* case of race-based discrimination to survive a motion to dismiss," the "pleading standard established in *Iqbal* and *Twombly* applies[.]" *Woods v. City of Greensboro,* 855 F.3d 639, 648 (4th Cir. 2017), *cert. denied,* ___ U.S. ___, 138 S. Ct. 558 (2017); *see also Swaso v. Onslow Cty. Bd. of Educ.,* 698 Fed. App'x 745, 747-48 (4th Cir. 2017) ("While a plaintiff need not plead a *prima facie* case to survive a motion to dismiss, a Title VII complaint is still subject to dismissal if it does not meet the ordinary pleadings standard under *Twombly* and *Iqbal*." (internal citations omitted)).

Based on the above standard, and as demonstrated more fully below, Plaintiff's Complaint must be dismissed in its entirety.

## LAW AND ARGUMENT

A. **Plaintiff Fails to State a Plausible Claim of Race Discrimination[2]**

Under Title VII, it is an "unlawful employment practice" for employers "to discriminate against any individual with respect to his or her compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e-2(a)(1).[3]

In the absence of direct evidence of discrimination, which is not alleged in Plaintiff's Complaint, Plaintiff must rely on the burden-shifting scheme articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). To state a plausible claim for relief in an employment discrimination action, a plaintiff must allege those facts that permit the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). In determining whether the allegations made in a complaint have raised more than a speculative inference that a plaintiff has a right to relief, the complaint must, at a minimum, allege facts sufficient to state all elements of his or her claims. *See Woods v. City of Greensboro,* 855 F.3d at 648; *Swaso v. Onslow Cty. Bd. of Educ.,* 698 Fed. App'x at 747-48. As demonstrated below, Plaintiff failed to allege sufficient facts to articulate a claim for race discrimination.

Plaintiff does not allege any direct evidence of discrimination, as she does not allege any "conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision." *Taylor v. Va. Union Univ.*, 193 F.3d 219, 232

---

[2] Maryland courts seek guidance from federal courts in interpreting the federal analog to Maryland statutes. *See, e.g., Wonasue v. Univ. of Md. Alumni Ass'n.*, 984 F. Supp. 2d 480, 486 (D. Md. 2013).

[3] In general, the elements of a claim under §1981 are the same as a Title VII claim. *Sherman v. Marriott Hotel Services, Inc*., 317 F.Supp.2d 609, 614 (D. Md. 2004). Therefore, Defendant intends for the foregoing argument as to Plaintiff's Title VII claim, to apply to Plaintiff's §1981 as well.

(4th Cir. 1999) (en banc) (citation and internal quotation marks omitted). Therefore, to state a claim for discrimination under Title VII, a plaintiff must allege sufficient facts that establish: (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class. *Ying-Jun Chen v. Md. Dep't of Health & Mental Hygiene*, No.: ELH-15-01796, 2016 U.S. Dist. LEXIS 19206, *44 (D. Md. 2016). In the case at bar, Plaintiff's race discrimination claim fails for a myriad of reasons.

Here, any fair reading of the Complaint demonstrates that Plaintiff fails to allege facts—as opposed to legal conclusions—that plausibly suggest she was subject to discrimination based on her race. *See generally* Compl. Putting aside the conclusory and speculative allegations in the Complaint, Plaintiff's factual allegations essentially boil down to the following: (1) Plaintiff's African American colleague was tasked with performing the work of a Caucasian colleague and was criticized when she requested a raise as not being as qualified as the Caucasian colleague, Compl. ¶ 28; (2) Mr. Wolfgang used an "irritated tone" with Plaintiff but was agreeable with her Caucasian colleagues, Compl. ¶ 39; (3) Mr. Wolfgang knew of Plaintiff's Black Lives Matter ("BLM") support and wrote and endorsed anti-BLM posts and racial/hostile comments on Facebook, Compl. ¶ 41; and (4) Mr. Wolfgang stated that a new hire for an attorney position who was of Mexican origin was not capable of performing the work because English was her second language, Compl. ¶ 44. None of these allegations are sufficient to withstand the dismissal of her claims.

Plaintiff's allegations are woefully insufficient to establish a fact-based nexus between an adverse employment action (in this case, Plaintiff's termination) on behalf of Defendant and Defendant's purported bias against Plaintiff's race. In an effort to show a fact-based nexus,

Plaintiff alleges merely that during some meetings Mr. Wolfgang acted irritated toward her and not toward her colleagues, that Mr. Wolfgang expressed disagreement with a social movement on his personal Facebook account, wholly distinct from the views of MCVRC as an organization, and stated on one occasion that a new employee might have a difficult time with the work given English was her second language. *See generally* Compl. Such "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" at the pleading stage and cannot sustain Plaintiff' discrimination claim. *Iqbal*, 556 U.S. at 678. Even if Plaintiff's allegations were true (and they are not), none of these allegations provide factual support that would allow the Court to draw a reasonable inference that Defendant acted unlawfully. *Id*. at 662. In short, Plaintiff's allegations do not "nudge [her] claim" that she was discriminated against by Defendant due to her race "across the line from conceivable to plausible." *Id*. at 680.

**B.     Plaintiff Alleges Insufficient Facts to Articulate a Hostile Work Environment Claim.**

Plaintiff's Title VII claims are also premised on the theory that the alleged race discrimination led to an unlawful hostile work environment. Compl. ¶ 72. A hostile work environment exists, "when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the [plaintiff's] employment and creates an abusive work environment." *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015); *see also Lester v. Natsios*, 290 F. Supp. 2d 11, 33 (D.D.C. 2003) ("Discrete acts constituting discrimination or retaliation claims… are difference in kind from a hostile work environment claim that must be based on severe and pervasive discriminatory intimidation or insult.") (citing *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002)).

To establish a *prima facie* case of a hostile work environment, Plaintiff must prove that the

offending conduct was: (1) unwelcome; (2) based upon a protected characteristic; (3) sufficiently severe or pervasive to alter the conditions of employment and create an objectively abusive work environment; and (4) imputable to the employer. *See Ocheltree v. Schollen Prods., Inc.*, 335 F.3d 325, 331 (4th Cir. 2003) (en banc). A court's determination whether such an environment exists includes a consideration of "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Boyer-Liberto*, 786 F.3d at 277 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)). "[C]allous behavior by [one's] superiors," *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003), or "a routine difference of opinion and personality conflict with [one's] supervisor," *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 276 (4th Cir. 2000), in contrast, do not rise to the level of actionable conduct or statements.

While the first element in the four-part test is subjective, the rest of the test is made up of objective components based on a "reasonable person" standard. *Pueschel v. Peters,* 577 F.3d 558, 565-66 (4th Cir. 2009). In order to satisfy her burden under the second element of the four-part test, Plaintiff must show that "but for" her race, the alleged conduct or statements would not have occurred. *Id*. As for the third element in the test, conduct or statements are considered sufficiently severe or pervasive to alter the terms or conditions of the employment if a workplace is "permeated with discriminatory intimidation, ridicule, and insult." *Id*. In contrast, "conclusory statements, without specific evidentiary support, cannot support an actionable claim for [hostile work environment]." *Causey*, 162 F.3d at 802.

To establish a hostile work environment, a claimant must not only perceive the environment to be hostile or abusive, the environment must be one that a reasonable person in the plaintiff's position would objectively find hostile or abusive. *Faragher v. City of Boca Raton,* 524

U.S. 775, 787 (1998). The objective test requires examination of the frequency of the alleged discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. *Conner v. Schrader-Bridgeport Int'l, Inc.,* 227 F.3d 179, 193 (4th Cir. 2000) (citing *Harris v. Forklift Sys., Inc.,* 510 U.S. 17 (1993)). The Supreme Court has made it abundantly clear that the "standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a general civility code." *Faragher*, 524 U.S. at 788 (internal quotations omitted). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious)" will not amount to a legally actionable hostile work environment claim. *See id.*

Against this backdrop, Plaintiff has not sufficiently alleged severe or pervasive conduct to state a hostile work environment claim. The alleged conduct was neither frequent nor severe. Indeed, the conduct alleged merely consisted of a few occasions where, as discussed above, Mr. Wolfgang spoke in an "irritated" manner towards Plaintiff but not towards her Caucasian colleagues, Compl. ¶ 39; and one occasion where Mr. Wolfgang stated that a new attorney of Mexican origin would have a difficult time with work because English was her second language, Compl. ¶ 44. The Fourth Circuit requires much more. Indeed, the Fourth Circuit has held that conduct far more egregious than the foregoing does <u>not</u> satisfy the "objectively hostile" element of a hostile work environment claim. *See e.g. Bonner v. Payless Shoe Source*, 1998 U.S. App. LEXIS 7438 (4th Cir. 1998) (holding that a supervisor reducing an African American manager's pay; forcing the manager to work more hours; tampering with inventory audits to place the manager's store in a poor light; paying white male employees at a higher salary than the manager; using the word "nigger" on more than one occasion; reporting to a black employee that he attended a Klu Klux Klan rally; tapping the manager on the head with a pen at a manager's meeting to make

a point regarding supervision; dropping his pen on the floor of the manager's store to see if the manager would pick it up; and telling a group of black managers that he could have them killed by a "crack head" after another black employee reported the supervisor's conduct regarding the manipulation of store audits was not sufficiently severe or pervasive to establish a racially hostile work environment).

Put simply, Plaintiff's allegations fall short of the type of conduct that would create an objectively hostile environment based on Fourth Circuit precedent. Therefore, her hostile work environment claim fails as a matter of law.

C. **Plaintiff Fails to Articulate a Claim of Retaliation under the False Claims Act or Maryland False Claims Act.[4]**

Plaintiff's claim of retaliation under the FCA fails because Plaintiff does not allege any facts showing that she engaged in any protected activity, or that Defendant retaliated against her "because of those acts" to support an FCA retaliation claim under 31 U.S.C. § 3730(h). Section 3730(h) of the FCA provides protection from retaliation for employees who are considering exposing their employer's fraud. 31 U.S.C. § 3730(b). To demonstrate retaliation, a plaintiff must allege facts showing that (1) she engaged in protected activity; (2) her employer knew of these acts; and (3) her employer took adverse action against her as a result of these acts. *See Glynn v. Impact Science & Technology, Inc.*, 807 F.Supp.2d 391, 402 (D. Md. 2011).

Under the first element, the FCA protects "lawful acts done . . . in furtherance of an action under [the FCA]," *i.e.*, steps taken antecedent to an FCA proceeding. 31 U.S.C. § 3730(h)(1). The FCA also insulates from retaliation in situations wherein a plaintiff acts in furtherance of "other efforts to stop one or more violations." *Id.* In other words, a plaintiff must establish that they had an "objectively reasonable belief" that her employer was violating the FCA, and therefore took

---

[4] *See* fn. 2.

10

active steps to either investigate an FCA violation or actually commence an FCA legal action. *See United States ex rel. Grant v. United Airlines Inc.*, 912 F.3d 190, 200 (4th Cir. 2018). Indeed, merely reporting concerns of misconduct to superiors is not sufficient to establish that a plaintiff engaged in protected activity. *See U.S. ex rel. Owens v. First Kuwaiti General Trading & Contracting Co.*, 612 F.3d 724, 735 (4th Cir. 2010) (citing *Zahodnick v. IBM Corp.*, 135 F.3d 911, 914 (4th Cir. 1997) (holding that simply reporting concerns of mischarging the government to a supervisor did not qualify as the employee acting in furtherance of an FCA action)). Rather, the plaintiff must allege specific evidence, deduced through investigation, of illegal and fraudulent conduct. *United States ex rel.*, 912 F.3d at 202.

Here, Plaintiff wholly fails to allege more than mere reports of purported misconduct to Mr. Wolfgang and Board of Directors Chairperson Debra Tall ("Ms. Tall"). Specifically, Plaintiff's complaints amount to the following: (1) Plaintiff disclosed to Mr. Wolfgang that he improperly paid a friend $20,000.00 of Federal Victims Crime Act ("VOCA") grant money to produce informational videos that were never produced (Compl. ¶ 19); (2) Plaintiff disclosed to the MCVRC Board of Directors and to Ms. Tall that Mr. Wolfgang and Catherine Owen ("Ms. Owen") submitted time sheets for the VOCA grant despite working from home and not having access to the requisite work materials (Compl. ¶ 24); and (3) Plaintiff disclosed to Ms. Tall that Mr. Wolfgang was improperly billing to the VOCA grant on his private law practice matters (Compl. ¶ 26).[5] As set forth above, simply reporting concerns of mischarging the government to superiors does not constitute protected activity under the FCA's retaliation provision. Moreover, Plaintiff's mere reporting concerns of Mr. Wolfgang and Ms. Owen's misconduct are not entitled to the protections § 3730(h) affords to legitimate whistleblowers.

---

[5] Plaintiff alleges numerous accounts of misuse of VOCA grant funds, but fails to set forth efforts beyond merely disclosing her concerns to Mr. Wolfgang and Ms. Tall.

Moreover, even if the forgoing reports were considered protected activity under the FCA, Plaintiff fails to allege facts that demonstrate this protected activity was in any way tied to her termination. In fact, Plaintiff herself asserts first, that Defendant did not provide a reason for termination of employment (Compl. ¶ 48)—further evincing a lack of a fact-based nexus between Plaintiff's disclosures and her termination. Therefore, Plaintiff's FCA and MFCA retaliation claims must be dismissed.

### D.     **Plaintiff Fails to Allege Sufficient Facts to Support a Claim of Wrongful Termination.**

Generally, at-will employment may be terminated by the employee or employer at any time for any reason. *See, e.g., Bagwell v. Peninsula Reg'l Med. Ctr.*, 106 Md. App. 470, 494 (Md. Ct. Spec. App. 1995). However, under Maryland law, the tort of wrongful discharge is a narrow exception, defined as "the willful termination of employment by the employer because of the employee's alleged failure to perform in accordance with the employer's expectations and the termination is contrary to a clear mandate of public policy." *Id*. at 495 (quoting *Allen v. Bethlehem Steel Corp.*, 76 Md. App. 642, 652 (Md. Ct. Spec. App. 1988)).

An employee must establish the following three elements to assert a claim for wrongful termination: "(1) that the employee was discharged; (2) that the dismissal violated some clear mandate of public policy; and (3) that there is a nexus between the defendant and the decision to fire the employee." *Sears, Roebuck & Co. v. Wholey*, 139 Md. App. 642, 649 (Md. Ct. Spec. App. 2001) (quoting *Shapiro v. Massengill*, 105 Md. App. 743, 764 (Md. Ct. Spec. App. 1995) (citation omitted)). The Maryland Court of Appeals has cautioned that such claims should be allowed sparingly and must be narrowly circumscribed. *See Porterfield v. Mascari II., Inc.*, 823 A.2d 590, 602 (Md. 2003).

Mandates of public policy are "confin[ed] ... to clear and articulable principles of law," *see id.* (internal marks and citation omitted), and the source of the mandate must "be a preexisting, unambiguous, and particularized pronouncement" that "make[s] the Maryland public policy on the topic not a matter of conjecture or even interpretation." *King v. Marriott Int'l, Inc.*, 866 A.2d 895, 902 (Md. 2005) (internal marks omitted). Maryland courts have explicitly cautioned that not all laws or statements of public policy give rise to wrongful discharge claims. Rather, a court must look to the, "accepted purpose behind recognizing the tort in the first place: to provide a remedy for an otherwise unremedied violation of policy." *See Yuan v. Johns Hopkins Univ.*, 135 A.3d 519, 528 (Md. 2016).

Here, Plaintiff asserts in her Complaint that she was terminated from her employment at MCVRC. Compl. ¶ 90. Next, Plaintiff vaguely alleges that her termination violated "a clear mandate of public policy," (*Id.*) yet fails to articulate what public policy Defendant allegedly violated—a requisite element of a wrongful termination claim. This is insufficient to establish a claim of wrongful termination. "An employee who asserts that he was wrongfully discharged must 'specifically identify the clear mandate of Maryland public policy that was violated by his termination.'" *Terry v. Legato Systems, Inc.*, 241 F.Supp.2d 566, 569 (D. Md. Jan. 28, 2003) (quoting *Szaller v. Am. Nat'l Red Cross, et al.*, 293 F.3d 148, 151 (4th Cir. 2002). In other words, the plaintiff must plead the specific mandate or public policy with particularity. *Id.* at 570 (citing *Porterfield v. Mascari II, Inc.*, 788 A.2d 242, 245 (2002)). At bottom, Plaintiff has failed to do so and as such, her wrongful termination claim must be dismissed.

## CONCLUSION

For the foregoing reasons, Defendant Maryland Crime Victims Resource Center, Inc. respectfully requests that the Court grant the instant Motion and dismiss Plaintiff Erica Edwards'

Complaint in its entirety, with prejudice.

Dated: June 23, 2022                          Respectfully submitted,

                                      By:     */s/ Brian A. Scotti*
                                                Brian A. Scotti, Esq. (MD Bar No.: 18249)
                                                Courtney R. Abbott, Esq. (MD Bar No.: 16199)
                                                GORDON REES SCULLY MANSUKHANI, LLP
                                                1101 King Street, Suite 520
                                                Alexandria, Virginia 22314
                                                T: (202) 399-1009
                                                F: (202) 800-2999
                                                bscotti@grsm.com
                                                cabbott@grsm.com
                                                *Counsel for Defendant*

## CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that on June 23, 2022, I electronically filed the foregoing ***Defendant's Memorandum in Support of its Motion to Dismiss Plaintiff's Complaint*** was electronically filed using the Court's CM/ECF e-filing system and served via the Court's e-filing notification system ***and*** via regular mail, postage-prepaid on the following counsel of record:

    Marc. E. Pasekoff, Esq.
    Shannon Mullins & Wright
    124 S. Royal Street
    Alexandria, Virginia 22314
    mpasekoff@smw.law
    *Counsel for Plaintiff*

                                                          */s/ Brian A. Scotti*
                                                          Brian A. Scotti, Esq. (MD Bar No.: 18249)