**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**Southern Division**

| | |
|---|---|
| **ERICA EDWARDS** | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Case No. 8:22-cv-01172-TJS |
| v. | ) |
| | ) |
| **MARYLAND CRIME VICTIMS'** | ) |
| **RESOURCE CENTER, INC.** | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S OPPOSITION TO**
**DEFENDANT'S MOTION TO DISMISS**

COMES NOW the Plaintiff, Erica Edwards, by counsel and pursuant to Fed. Rule 12(b)(6),

submits her Memorandum in Support of Plaintiff's Opposition to Defendant Maryland Crime

Victims' Resource Center, Inc.'s Motion to Dismiss.

**I.      Introduction**

Erica Edwards (African American) is a well-established, respected member of the grant

management community.  Compl. at ¶8.  She has a distinguished record of academic, professional

and personal achievement that highlights her drive, organization, enthusiasm and creativity.  *Id.*

Despite Ms. Edwards' unblemished employment record, her supervisor, Kurt Wolfgang (Caucasian)

terminated Ms. Edwards on September 18, 2020 without reason and replaced her as the Director of

Finance and Operations with Jennifer Abell (Caucasian), an individual with far less experience.

Compl. at ¶¶30, 48, 49, 51.  Ms. Edwards alleges that MCVRC engaged in discriminatory conduct

Counts I-III), retaliatory conduct (Counts V, VI) and created and maintained a hostile work environment (Count IV).[1]

## II.   **Factual Background**

Ms. Edwards began working as Director of Finance and Operations at Maryland Crime Victims' Resource Center ("MCVRC") on August 20, 2018.  Compl. at ¶9.  At MCVRC, Ms. Edwards was the only African American Director.  Compl. at ¶38.

MCVRC's source of revenue overwhelmingly is secured through grant funding.  Compl. at ¶14.  From at least September 2016 through September 2020, MCVRC received grant funding, and was a grant recipient, under the federal Victims of Crime Act ("VOCA") Grant Program.  VOCA is administered through the Maryland Governor's Office of Crime Control and Prevention ("Maryland Governor's Office") and funded by the United States Department of Justice, Office of Justice Programs, Office of Victims of Crime.  Compl. at ¶15.  Applicants for this funding are required to apply for grant funding through the Maryland Governor's Office web-based application process.  Thereafter, the Maryland Governor's Office assesses the merits of the proposed program.  The Maryland Governor's Office distributes the awarded funds after submission into its Grant Management System.  Compl. at ¶16.  The VOCA Grant Program expressly identifies "Allowable Costs" and "Unallowable Costs" at Section VIII, parts B and C.  "Unallowable Costs" include "Lobbying/administrative advocacy" and "Fundraising."  The grant also prohibits billing time which is not spent on that specific program.  Compl. at ¶17.  The Department of Justice's Financial Grants Guide also contains a provision for unallowable costs such as lobbying and fundraising.  Compl. at ¶18.

---

[1] Plaintiff will not oppose dismissal of Count VII (wrongful termination).

Kurt Wolfgang was named Interim Executive Director on or about August 19, 2019.  Compl. at ¶11.  Mr. Wolfgang is aware of Ms. Edwards' support for the Black Lives Matter movement.  Compl. at ¶41.  Nevertheless, in his Facebook posts, Mr. Wolfgang espoused racial hatred; he wrote and endorsed anti-Black Lives Matter posts as well as racial/hostile comments.  For instance, Mr. Wolfgang equated BLM with a domestic terror group, endorsed the use of guns in response to protests, equated protestors with "welfare" recipients and encouraged people to "start fighting" the "culture war" when choosing "[which] side are you one."  *Id.;* Compl. Exhibit 1**.**

Consistent with this hostility, Mr. Wolfgang was more combative with Ms. Edwards than with other co-workers.  Compl. at ¶39.  In Directors meetings, he would use an irritated tone with Ms. Edwards but would be agreeable with her Caucasian colleagues.  *Id.*  He directed the relocation of potential employees away from areas with a higher Black population, including the area in which Ms. Edwards lives.  Compl. at ¶43.  Ms. Edwards is the only employee Mr. Wolfgang characterized as "angry."  Compl. at ¶39.  Following Mr. Wolfgang's lead, another Caucasian co-worker, Catherine Owen, gratuitously expressed that she was "afraid" of Ms. Edwards.  Compl. at ¶39.

Beginning early in his tenure as Interim Executive Director and continuing, Mr. Wolfgang engaged in financial improprieties regarding the VOCA Grant.  Compl. at ¶19.  Immediately preceding her termination, Ms. Edwards disclosed that:

- Mr. Wolfgang had not completed informational videos for which MCVRC received funds from the VOCA Grant Program.  Compl. at ¶19.

- Mr. Wolfgang and another employee (Ms. Owen) were submitting false timesheets for VOCA Grant payment.  Compl. at ¶24.

- Mr. Wolfgang improperly billed the VOCA Grant for time he spent lobbying the Maryland General Assembly, an unallowable cost.  Compl. at ¶25.

- Mr. Wolfgang misused VOCA grant funds by billing time to be paid when he was working on his private law practice matters.  Compl. at ¶26.

3

- An employee (Ms. Own) was getting paid but not working.  Compl. at ¶27.

- MCVRC lawyers falsely billed the VOCA Grant by inflating the number of hours worked in jurisdictions with smaller caseloads.  Compl. at ¶29.

- Mr. Wolfgang was attempting to misuse VOCA Grant funds in his hiring of Jennifer Abell (Caucasian) as a Fundraiser.  Compl. at ¶¶31, 35.

- Mr. Wolfgang requested that Ms. Edwards paid Ms. Owen from the VOCA Grant for her time at the doctor's office, time at the workers compensation hearing, and time gathering documents for her hearing.  Compl. at ¶¶33-34.

Additionally, Mr. Wolfgang excluded Ms. Edwards from her oversight role.  Compl. at ¶22.  Mr. Wolfgang worked to minimize Ms. Edwards' experience, ability and participation at MCVRC.  Compl. at ¶45.  Mr. Wolfgang directed tasks away from Ms. Edwards.  Compl. at ¶46. Mr. Wolfgang did not provide Ms. Edwards with adequate workplace resources.  Compl. at ¶47.

In a mid-September 2020 meeting in which Ms. Edwards continued to express her concerns about the hiring of Jennifer Abell (Caucasian), Mr. Wolfgang warned Ms. Edwards not to contact the Board of Directors and questioned her continued employment at MCVRC if she did not agree with him.  Compl. at ¶¶35, 36.

Despite Ms. Edwards' unblemished employment record, Mr. Wolfgang terminated Ms. Edwards on September 18, 2020 without reason and replaced her with Ms. Abell, an individual with far less experience.  Compl. at ¶¶30, 48, 49, 51.  Ms. Edwards was the only Director terminated by Mr. Wolfgang.  Compl. at ¶48.  Even after he improperly terminated her employment, Mr. Wolfgang continued to disparage Ms. Edwards and minimize her qualifications. [2]  Compl. at ¶¶50, 52.

III.   **Standard of Review**

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint but does not

---

[2] If additional facts are required, Plaintiff requests leave to amend her Complaint.

"resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."
*Presley v. City of Charlottesville,* 464 F.3d 480, 483 (4th Cir. 2006).

Ms. Edwards' complaint need only satisfy the standard of Rule 8(a) which requires a "short and plain statement of the claim showing that the pleader is entitled to relief."  The factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955 (2007) (internal citations omitted). To satisfy this standard, Ms. Edwards need not forecast evidence sufficient to prove the elements of the claim.  *Walters v. McMahen,* 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted).  Instead, Ms. Edwards must advance her claims "across the line from conceivable to plausible."  *Walters v. McMahen,* 684 F.3d at 439.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  *Ashcroft v. Iqbal,* 556 U.S. 662, 663, 129 S.Ct. 1937 (2009).

At this stage, all well-pleaded allegations in Plaintiff's complaint must be considered as true. *Albright v. Oliver,* 510 U.S. 266, 268, 114 S.Ct. 807 (1994).  All factual allegations must be construed in the light most favorable to Ms. Edwards.  *Harrison v. Westinghouse Savannah River Co.,* 176 F.3d 776, 783 (4th Cir. 1999) (citations omitted).  The court should not grant a motion to dismiss for failure to state a claim unless "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."  *GE Inv. Private Placement Partners II v. Parker,* 247 F.3d 543, 548 (4th Cir. 2001). (citations omitted).

## IV.    Argument

### A.  Ms. Edwards has pled a claim for violation of Title VII,  42 U.S.C. §1981 and the Maryland Fair Employment Practices Act.

#### Counts I, II and III

**Title VII** prohibits discrimination in the "terms, conditions, or privileges of employment, because of race."  42 U.S.C. Section 2000e-2(a).  Like Title VII, **42 U.S.C. §1981** prohibits, *inter alia*, "discrimination in employment on the basis of race."  *Yashenko v. Harrah's NC Casino Co., LLC*, 446 F.3d 541, 551-52 (4th Cir. 2006); *Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 459-60, 95 S. Ct. 1716 (1975) ("§1981 affords a federal remedy against discrimination in private employment on the basis of race").  Substantively, the evidentiary standards for analyzing claims of race-based discrimination under §1981 are identical to those employed under Title VII.  *Jenkins v. Gaylord Enter. Co.,* 840 F.Supp.2d 873, 880 (D. Md. 2012).

The **Maryland Fair Employment Practices Act** ("MFEPA") (*Md. Code. Ann.*, State Gov't §20-601 *et seq.*) "is the state law analogue of Title VII."  *Alexander v. Marriott Int'l, Inc.*, 2011 U.S. Dist. LEXIS 33329, 2011 WL 1231029, at *6 (D. Md. Mar. 29, 2011); *Haas v. Lockheed Martin Corp.*, 396 Md. 469, 483 n.8, 914 A.2d 735, 743 n.8 (2007).  MFEPA prohibits substantive discrimination by employers on the basis of race (§20-602) and Maryland courts interpreting MFEPA have often found federal cases arising under Title VII to be persuasive authority. *See, e.g., Taylor v. Giant of Md., LLC*, 423 Md. 628, 652, 33 A.3d 445, 459 (2011); *Molesworth v. Brandon*, 341 Md. 621, 632-33, 672 A.2d 608, 614 (1996).

In the context of a Title VII case, Ms. Edwards need not plead a *prima facie* case of discrimination to survive a motion to dismiss.  *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 510, 122 S.Ct. 992 (2002); *Bing v. Brivo Sys., LLC,* 959 F.3d 605, 616-17 (4th Cir. 2020).  Instead, she only is required to allege facts to satisfy the elements of a cause of action created by that statute.  *McCleary-*

*Evans v. Md. Dep't of Transp., State Highway Admin.,* 780 F.3d 582, 585 (4th Cir. 2015) (complaint must support a "reasonable inference that the defendant is liable for the misconduct alleged").  When determining if Ms. Edwards has pleaded sufficient plausible facts to establish a violation of Title VII, the inquiry is whether she "alleges facts that plausibly state a violation of Title VII above a speculative level."  *Coleman v. Md. Ct. of Appeals,* 626 F.3d 187, 190 (4th Cir. 2010) (internal citations omitted).

An employee seeking to use direct or indirect evidence to establish discrimination must present evidence that "both display[s] a 'discriminatory attitude' and bear[s] a causal relationship with the adverse employment action."  *Ousley v. McDonald,* 648 Fed.Appx. 346, 349 (4th Cir. 2016) (citations omitted).  Here, Mr. Wolfgang's discriminatory attitude are clearly reflected in his social media posts.  Compl. Exhibit 1.  Before terminating her employment, Mr. Wolfgang's actions were consistent with his posts.  He minimized Ms. Edwards' experience, ability and participation at MCVRC.  Compl. at ¶45.  Rather than meet with Ms. Edwards about MCVRC's finances and invoices, he contacted Kathleen Callan, a Caucasian staff attorney.  Compl. at ¶45.  Mr. Wolfgang regularly relied upon Pauline Mandel, MCVRC's Caucasian Director of Legal Services, to explain the particulars of Ms. Edwards' job and would call Ms. Mandel directly to discuss many issues but refused to speak to Ms. Edwards.  Compl. at ¶45.  Mr. Wolfgang asked Ms. Owen to review the monthly profit and loss reconciliation reports – a role tasked to Ms. Edwards – and would not review these reports with Ms. Edwards.  Compl. at ¶46.  Mr. Wolfgang did not provide Ms. Edwards with adequate workplace resources, but ensured that her Caucasian co-worker, Ms. Abell, was sufficiently staffed.  Compl. at ¶47.

Alternatively, if these allegations do not rise to the level of direct evidence, the elements of a *prima facie* case of discrimination under Title VII are established through: (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different

treatment from similarly situated employees outside the protected class.  *Coleman v. Md. Ct. of Appeals,* 626 F.3d at 190 (4th Cir. 2010).[3]

The first and third elements are not, and cannot be, disputed.  **Compl. at ¶¶38, 48.**

Concerning the second element, Ms. Edwards has alleged that she "never received a warning about any disciplinary or alleged performance issues" and that her most recent performance audits (completed in December 2018) "found zero deficiencies."  Compl. at ¶51.  Defendant's Motion does not contest the second element.

The fourth element can be met by showing that "similarly-situated employees outside the protected class received more favorable treatment."  *White v. BFI Waste Servs., LLC,* 375 F.3d 288, 295 (4th Cir. 2004).  **The** Fourth Circuit has noted that the similarly situated analysis typically occurs in the context of establishing a *prima facie* case of discrimination, not at the 12(b)(6) stage. *Holloway v. Maryland,* U.S. App. LEXIS 11170, 2022 WL 1207165, at * 3 (4th Cir. Apr. 25, 2022). At the motion to dismiss stage, plaintiff should still identify the proposed comparator and establish a plausible basis for believing that the comparator was actually similarly situated.  *Asi v. Info. Mgmt. Group, Inc.,* 2019 U.S. Distr. LEXIS 156486, 2019 WL 4392537, at *6 (D. Md. Sept. 13, 2019) (citation omitted).  Alternatively, Ms. Edwards meets the fourth element with an allegation that her position remained open or was filled by similarly qualified applicants outside the protected class. *Holland v. Wash. Homes, Inc.,* 487 F.3d 208, 214 (4th Cir. 2007).

Ms. Edwards has sufficiently pled the fourth element as well.  First, she alleges that she was treated less favorably than at least one Caucasian co-worker.  *Berge v. Rink Mgmt. Servs. Corp.,* 2021 U.S. Dist. LEXIS 92403 at *5, 2021 WL 1946514 (May 14, 2021) (motion to dismiss denied

---

[3]The *McDonnell Douglas* framework establishes "an evidentiary standard, not a pleading requirement." *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 510, 122 S.Ct. 992 (2002).

after plaintiff made plausible allegation that she was treated less favorably than at least one Caucasian, less experienced counterpart). Here, Ms. Edwards alleges that Mr. Wolfgang replaced her as the Director of Finance and Operations with newly-hired Jennifer Abell – a Caucasian individual with "far less experience than Ms. Edwards." Compl. at ¶¶9, 31, 49, 52. Like the plaintiff in *Berge,* Ms. Edwards was terminated "for no reason whatsoever." *Berge v. Rink Mgmt. Servs. Corp.,* 2021 U.S. Dist. LEXIS 92403 at * 5; Compl. at ¶48. Alone, these allegations make plausible that Ms. Edwards was terminated because of her race.

Ms. Edwards buttresses the plausibility of her claim with more specifics that establish an inference of unlawful discrimination based on race. As Mr. Wolfgang is aware, Ms. Edwards supports the Black Lives Matter movement. Compl. at ¶41. The relevant time period – Summer of 2020 – was particularly charged emotionally. Ms. Edwards was terminated in September 2020. Compl. at ¶48. In his contemporaneous Facebook posts (July/August 2020), Mr. Wolfgang espoused racial hatred; he wrote and endorsed anti-Black Lives Matter posts as well as racial/hostile comments. For instance, Mr. Wolfgang equated Black Lives Matter with a domestic terror group, endorsed the use of guns in response to protests, equated protestors with "welfare" recipients and encouraged people to "start fighting" the "culture war" when choosing "[which]side are you one." Compl. at ¶41; Complaint Exhibit 1. Mr. Wolfgang's own words support (at least) an inference of discrimination based on race. *German v. Akal Sec., Inc.,* 2011 U.S. Dist. LEXIS 136470 at *13, 2011 WL 5974619 (D. Md. Nov 29, 2011) (reasonable inference of discrimination may be created through name-calling or other racially charged language).

Regarding Ms. Edwards, Mr. Wolfgang's actions were consistent with his social media posts. He worked to minimize Ms. Edwards' experience, ability and participation at MCVRC. Compl. at ¶45. Rather than meet with Ms. Edwards about MCVRC's finances and invoices, he contacted Kathleen Callan, a Caucasian staff attorney. Compl. at ¶45. Mr. Wolfgang regularly relied upon

Pauline Mandel, MCVRC's Caucasian Director of Legal Services, to explain the particulars of Ms. Edwards' job and would call Ms. Mandel directly to discuss many issues but refused to speak to Ms. Edwards, even after Ms. Mandel told him to call Ms. Edwards.  Compl. at ¶45.  Mr. Wolfgang asked Ms. Owen to review the monthly profit and loss reconciliation reports – a role tasked to Ms. Edwards – and would not review these reports with Ms. Edwards.  Compl. at ¶46.  Instead, he asked Ms. Callan.  Compl. at ¶46.  **Mr. Wolfgang did not provide Ms. Edwards with adequate workplace resources, but ensured that her Caucasian co-worker, Ms. Abell, was sufficiently staffed.**  Compl. at ¶47.

Finally, during her tenure at MCVRC, Ms. Edwards was subjected to unwarranted personal attacks.  Mr. Wolfgang targeted Ms. Edwards and unfairly characterized only her as "angry." Compl. at ¶39.  In Ms. Edwards' presence, Mr. Wolfgang directed a Caucasian employment candidate not to relocate to Prince George's County or Charles County, implying unsuitability because of the higher Black population.  **Ms. Edwards lives in Waldorf, Maryland.**  Compl. at ¶43.

Overall, this Court may review the "totality of circumstances" in determining whether Ms. Edwards has adequately alleged discriminatory intent.  *Strothers v. City of Laurel,* 895 F.3d 317, 330-31 (4th Cir. 2018).  In doing so, Ms. Edwards has plausibly alleged, with factual specificity, Defendant's discrimination based on her race.

**B.  <u>Ms. Edwards has pled a claim for a hostile work environment.</u>**

### Count IV

To establish harassment, Ms. Edwards must show that (1) she is a member of a protected class or engaged in protected activity, (2) she was subjected to harassment based on her membership in this class or the protected activity, (3) the harassment was sufficiently severe or pervasive so as to alter the terms and conditions of her employment and create a discriminatorily abusive working environment, and (4) there is a basis for imputing liability to the employer.  *Harris v. Forklift*

10

*Systems, Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367 (1993).  Factors to consider are the frequency of the alleged discriminatory conduct, its severity, whether it is physically threatening or humiliating, and if it unreasonably interferes with an employee's work performance.  *Harris v. Forklift Systems, Inc.*, 510 U.S. at 21, 114 S.Ct. 367.  Ms. Edwards' environment is evaluated from the "objective viewpoint of a reasonable person in her circumstances."  *Harris*, 510 U.S. at 21-22, 114 S.Ct. 367.

Defendant's motion addresses only the "severe or pervasive" requirement.  Motion to Dismiss at p. 9-10.  This requirement is not, and "by its nature cannot be, a mathematically precise test." *Boyer-Liberto v. Fontainebleau Corp.,* 786 F.3d 264, 278 (4th Cir. 2015) (*en banc*).

To begin, Mr. Wolfgang was in charge at MCVRC.  Compl. at ¶11; *Boyer-Liberto v. Fontainebleau Corp.,* 786 F.3d at 278 ("In measuring the severity of harassing conduct, the status of the harasser may be a significant factor – e.g., a supervisor's use of [a racial epithet] impacts the work environment far more severely than use by co-equals.").  Comments that single out members of a protected class are relevant not only as to whether a particular work environment was objectively hostile to members of the protected class, but also as to whether an employee belonging to the protected class subjectively felt harassed.  *Jackson v. Quanex,* 191 F.3d 647, 661 (6th Cir. 1991).  All that is required is a showing that if Ms. Edwards had been white, she would not have been treated in the same manner.  *Aman v. Cort Furniture Rental Corp.,* 85 F.3d 1074, 1083 (3rd Cir. 1996); Compl. at ¶¶20, 22, 39, 41, 45, 46, 47, 52.

Mr. Wolfgang's own words reflect the racial animus he possesses and the hostile work environment to which he subjected Ms. Edwards.  As Mr. Wolfgang is aware, Ms. Edwards supports the Black Lives Matter movement – a movement rooted in systemic racism and racial inequality, injustice and protest.  Compl. at ¶41.  With the death of George Floyd and the 2020 Presidential election, the relevant time period – Summer of 2020 – was particularly charged emotionally.  In his contemporaneous Facebook posts, Mr. Wolfgang espoused racial hatred; he wrote and endorsed

anti-Black Lives Matter posts as well as racial/hostile comments.  He equated Black Lives Matter with a domestic terror group and endorsed the use of guns in response to protests.  Mr. Wolfgang linked BLM protestors with "welfare" recipients and encouraged people to "start fighting" the "culture war" when choosing "[which]side are you one."  Compl. at ¶41; Complaint Exhibit 1; *Strickland v. City of Detroit,* 995 F.3d 495, 504 (6th Cir. 2021) (social media post denigrating Black Lives Matter protesters may be considered in evaluating hostile work environment claim).

His comments were intended to intimidate, ridicule and maliciously demean the status of Ms. Edwards as a BLM supporter and those individuals who look like her.  *See Engler v. Harris Corp.,* 2012 U.S. Dist. LEXIS 122167, 2012 WL 3745710, at *5 (D. Md. Aug. 28, 2012).  Similarly, Mr. Wolfgang's graphics repeatedly show guns and promote racial and physical violence at a time when street protests and actual/threats of violence occurred regularly.  In no way can Mr. Wolfgang's statements be labeled as "simple teasing."  *Contrast Faragher v. City of Boca Raton,* 524 U.S. 775, 788, 118 S.Ct. 2275 (1998).  Instead, a reasonable jury could find statements like the ones made and endorsed by Mr. Wolfgang send a clear message and carry the distinctive tone of racial motivations and implications.  *Aman v. Cort Furniture Rental Corp.,* 85 F.3d at 1083 (certain statements convey the "message that members of a particular race are disfavored and that members of that race are, therefore, not full and equal members of the workplace").

Mr. Wolfgang matched his hostile words with hostile conduct.  Ms. Edwards was the only Black Director at MCVRC.  Compl. at ¶38.  Interacting with her, Mr. Wolfgang was more combative, used an irritated tone (missing when communicating with Caucasian employees) and unfairly characterized her as "angry."  Compl. at ¶39.  Mr. Wolfgang openly denigrated areas of Maryland such as Prince George's County and Charles County, the area where Ms. Edwards lives and both areas in which there is a higher Black population.  Compl. at ¶43.  Recognizing it was acceptable to speak in this manner, one of her co-workers expressed that she was "afraid" of Ms.

Edwards – furthering the old stereotype that African Americans are dangerous.  Compl. at ¶39; *Galdamez v. Potter,* 415 F.3d 1015, 1024 ftnt 6 (9th Cir. 2005) ("code words" may convey a clear message of racial intimidation based on the environment in which they appear and the context in which they are used).

Mr. Wolfgang also disparaged another Black MCVRC employee (of which there were not many).  Though Mr. Wolfgang criticized a Black employee for wanting a pay raise because she was performing two jobs, he readily approved a pay raise for Catherine Owen (Caucasian) for additional work that she did not perform.  Compl. at ¶¶12, 28.  Incidents of racial harassment that Ms. Edwards learns of secondhand and did not personally experience may "contribute to a work environment that was hostile . . . ."  *Jackson v. Quanex,* 191 F.3d at 66.

Equally troublesome, Mr. Wolfgang intentionally took steps to minimize Ms. Edwards at MCVRC.  On multiple occasions, and without fear of consequences for his action, Mr. Wolfgang bypassed Ms. Edwards in favor of Caucasian employees – even though Ms. Edwards' position, responsibilities and experience mandated that she be part of the process.  Moreover, Mr. Wolfgang did not provide Ms. Edwards with adequate workplace resources, but ensured that her Caucasian co-worker, Ms. Abell, was sufficiently staffed.  Compl. at ¶¶45, 46, 47; *LeCounte v. City of Miami Beach*, 2016 U.S. Dist. LEXIS 24255 at *2, 2016 WL 738904 (S.D. Fla. Feb. 23, 2016) (plaintiff adequately alleged hostile work environment claims based on race when her Hispanic supervisor regularly addressed her in a racially demeaning and derogatory manner, intentionally excluded her from interoffice communications, systematically stripped her of various duties and responsibilities, intentionally obstructed and sabotaged her work to get her fired, subjected her to daily verbal confrontations and threatened to discipline her if she told human resources).  In light of the racially motivated social media posts, a reasonable jury could interpret this behavior as part of a "complex tapestry of discrimination.  *Aman v. Cort Furniture Rental Corp.,* 85 F.3d at 1083.

13

Here, Ms. Edwards has pled numerous incidents over an ongoing time period.  To her and to the reasonable person, the intent of these repeated comments and actions that belittled her were made because she is African American.  It was of no consequence to Mr. Wolfgang whether his attacks were professionally or personally based – Ms. Edwards was inferior and she needed regular reminding.  Even if each of these incidents, alone, may not rise to the severe or pervasive standard, this Court cannot "ignore the cumulative effect of continuous harassment" plausibly alleged by Ms. Edwards.  *EEOC v. Sunbelt Rentals,* 521 F.3d 306, 318 (4th Cir. 2008).  Accordingly, Ms. Edwards has provided sufficient allegations and details to allow this Court "to infer more than the mere possibility of misconduct based on its judicial experience and common sense."  *Coleman v. Md. Court of Appeals,* 626 F.3d at 190 (4th Cir. 2010) (internal citations omitted).

**C.  Ms. Edwards has pled a claim for violation of §3730(h) of the False Claims Act and retaliation under the Maryland False Claims Act.**

**Counts V and VI**

Fundamentally, both the False Claims Act ("FCA") and the Maryland False Claims Act ("MFCA") prohibit the presentation of a "false or fraudulent claim for payment or approval" to the government. *United States v. Grant*, 912 F.3d 190, 196 (4th Cir. 2018).  Both statutes prohibit MCVRC from taking retaliatory measures against Ms. Edwards as a result of her protected activity.

Section 3730 of the False Claims Act provides that an employee "shall be entitled to all relief necessary to make [her] whole, if [she] is discharged, demoted, suspended, threatened, harassed, or in any manner discriminated against in the terms and conditions of employment because of lawful acts done by [her] in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter." 31 U.S.C. §3730(h).  Neither form of protected activity necessarily requires the existence of a substantive FCA claim, as "retaliation can occur while employees are investigating or collecting information about a possible fraud, before they have put all the pieces of

the puzzle together." *Glynn v. EDO Corp.,* 710 F.3d 209, 214 (4th Cir. 2013).  Sections 8-107(a)(2)

and (4) of the *Annotated Code of Maryland,* General Provisions Article, prohibit, *inter alia,*

retaliatory action against an employee such as Ms. Edwards who either "discloses… to a supervisor

…  an activity, a policy, or a practice" that the employee reasonably believes violates Section 8-102

or "objects to or refuses to participate in any activity, policy or practice that the employee

reasonably believes" is in violation of Section 8-102.  The FCA and MFCA are considered *in pari*

*materia* and this Court may treat these claims together.  *Gharib v. J. of the Comm. on the Pol. Econ.*

*of the Good Soc'y*, 2018 U.S. Dist. LEXIS 167322, 2018 WL 4679954, at *7-8 (D. Md. Sept. 27,

2018) (addressing retaliation under Md. Gen. Prov. Code §8-107).

      For her FCA and MFCA retaliation claims, Ms. Edwards has alleged facts sufficient that

support a reasonable inference that: (1) she engaged in protected activity; (2) her employer knew

about the protected activity; and (3) her employer took adverse action against her as a result."

*United States ex rel. Grant v. United Airlines, Inc.,* 912 F.3d 190, 200 (4th Cir. 2018).  Retaliation

claims under §3730(h) only must satisfy the notice-pleading standard of Rule 8(a).  *United States ex*

*rel. Grant v. United Airlines Inc.,* 912 F.3d at 200.  This standard has been described as "relatively

low."  *Young v. CHS Middle East, LLC*, 611 Fed.Appx. 130, 132 (4th Cir. 2015).  Ms. Edwards need

not prove an underlying False Claims Act violation to state a plausible claim for retaliation.

*Graham Cnty. Sil & Water Conservation Dist. v. U.S. ex rel. Wilson,* 545 U.S. 409, 416, 125 S.Ct.

2444 (2005).

      1.  **Ms. Edwards engaged in protected activity.**

      Section 3730(h)(1) defines two types of protected activity.  At issue here is the "second

prong," namely "other efforts to stop 1 or more violations of the False Claims Act."  Under this

second prong, "an act constitutes protected activity where it is motivated by an objectively

reasonable belief that the employer is violating, or soon will violate, the FCA."  *United States ex rel.*

*Grant v. United Airlines, Inc.,* 912 F.3d at 201-02; *Mason v. Netcom Techs., Inc.*, 2021 U.S. Dist.

LEXIS 179853, 2021 WL 4286535, at *3 (D. Md. Sept. 21, 2021).  The Fourth Circuit has adopted a

standard of "objective reasonableness" in judging whether a plaintiff has met this prong. "Under this

standard, an act constitutes protected activity where it is motivated by an objectively reasonable

belief that the employer is violating, or soon will violate, the FCA."  *United States ex rel. Grant v.*

*United Airlines, Inc.,* 912 F.3d at 201.  A belief is objectively reasonable "when the plaintiff alleges

facts sufficient to show that [she] believed [her] employer was violating the FCA, that this belief

was reasonable, that [she] took action based on that belief, and that [his] actions were designed to

stop one or more violations of the FCA."  *Id.* at 201-02.  The meaning of protected activity under the

amended language of §3730(h) must be interpreted broadly.  *Young v. CHS Middle East, LLC,* 611

Fed. Appx. at 132-33.

In this case, MCVRC's source of revenue overwhelmingly is secured through grant funding.

Compl. at ¶14.  From at least September 2016 through September 2020, MCVRC received grant

funding, and was a grant recipient, under the federal Victims of Crime Act ("VOCA") Grant

Program.  VOCA is administered through the Maryland Governor's Office of Crime Control and

Prevention ("Maryland Governor's Office") and funded by the United States Department of Justice,

Office of Justice Programs, Office of Victims of Crime.  Compl. at ¶15.  Applicants for this funding

are required to apply for grant funding through the Maryland Governor's Office web-based

application process.  Thereafter, the Maryland Governor's Office assesses the merits of the proposed

program.  The Maryland Governor's Office distributes the awarded funds after submission into its

Grant Management System.  Compl. at ¶16.  The VOCA Grant Program expressly identifies

"Allowable Costs" and "Unallowable Costs" at Section VIII, parts B and C.  "Unallowable Costs"

include "Lobbying/administrative advocacy" and "Fundraising."  The grant also prohibits billing

time which is not spent on that specific program.  Compl. at ¶17.  The Department of Justice's

Financial Grants Guide also contains a provision for unallowable costs such as lobbying and

fundraising.  Compl. at ¶18.

Ms. Edwards engaged in the following protected activity:

- Ms. Edwards repeatedly disclosed to Mr. Wolfgang that the informational videos for which MCVRC received funds from the VOCA Grant Program needed to be completed because the funds had been received and not returned from the VOCA Grant.  The videos were never produced and the funds were not returned.  Compl. at ¶19.

- On several occasions beginning in Spring 2020, Ms. Edwards disclosed to Board of Directors Chairperson Debra Tall (who relayed the disclosure to Mr. Wolfgang) that Mr. Wolfgang and Ms. Owen were submitting false timesheets for the VOCA Grant to be billed for their salary.  Compl. at ¶24.

- The VOCA Grant prohibits the billing of time spent unrelated to its programs to receive funds.  Mr. Wolfgang improperly billed the VOCA Grant for time he spent lobbying the Maryland General Assembly, another unallowable cost.  Ms. Edwards disclosed to Ms. Tall that Mr. Wolfgang was billing his lobbying time to the VOCA Grant.  Compl. at ¶25.

- In approximately Spring 2020, Ms. Edwards disclosed to Ms. Tall that Mr. Wolfgang misused VOCA grant funds by billing time to be paid when he was working on his private law practice matters.  For this work, the VOCA grant was billed even after Ms. Edwards disclosed to Ms. Tall that such billing was impermissible under the VOCA grant.  Ms. Edwards disclosed to Ms. Tall that this billing was occurring around March 2020.  Compl. at ¶26.

- Ms. Edwards disclosed to Ms. Tall that an employee (Ms. Own) was getting paid but not working.  In July 2019, Ms. Owen had been injured while attending a proceeding in Charles County.  Compl. at ¶27.

- In Summer 2020, Ms. Edwards disclosed to Mr. Wolfgang and Ms. Tall that MCVRC lawyers falsely billed the VOCA Grant by inflating the number of hours worked in jurisdictions with smaller caseloads.  Compl. at ¶29.

- In Summer 2020 and September 14, 2020, Ms. Edwards disclosed to Mr. Wolfgang and Ms. Tall that Mr. Wolfgang was attempting to misuse VOCA Grant funds in his hiring of Jennifer Abell as a Fundraiser.  Compl. at ¶¶31, 35.

- On September 11, 2020 relating to a lawsuit focused on Ms. Owen's worker's compensation claim, Mr. Wolfgang requested that Ms. Edwards pay Ms. Owen from the VOCA Grant for her time at the doctor's office, time at the workers compensation hearing, and time gathering documents for her hearing.  Ms. Edwards disclosed to Mr. Wolfgang that these expenses could not be covered with any grant funds.  Mr. Wolfgang approved Administrative Leave, even after Ms. Edwards repeated that the use of grant funds was not permitted.  Compl. at

¶¶33-34.

Protected activity includes acts in furtherance of a claim filed *or to be filed* under the FCA. §3730(h).  Protected activities include collecting information about a possible fraud, even before the plaintiff puts together "all the pieces of the puzzle."  *Mann v. Heckler & Koch Defense, Inc.,* 630 F.3d 338, 343-44 (4th Cir. 2010) (citations omitted).

In its Motion (at p. 11), Defendant offers one argument to dismiss the FCA and MFCA retaliation claims – that reporting concerns is not protected activity – and cites two (2) cases in support:  *Zahodnick v. IBM Corp.,* 135 F.3d 911 (4th Cir. 1997); *U.S. ex rel. Owens v. First Kuwaiti General Trading & Contracting Co.,* 612 F.3d 724, 735 (4th Cir. 2010).[4]

The cases cited by Defendant are unpersuasive because neither applied the 2010 FCA amendment to protect employees from being fired for undertaking "other efforts to stop 1 or more violations" of the Act.  The amendment applies to conduct on or after its date of enactment on May 20, 2009.  *Pub. L. No. 111-21,* §4(f), 123 Stat. at 1625.  *Zahodnick* was decided in 1997 and *Owens* was analyzed under the prior version in which plaintiff was required to show he took acts in furtherance of an FCA suit.  *U.S. ex rel. Owens v. First Kuwaiti General Trading & Contracting Co.,* 612 F.3d at 735.

The Fourth Circuit has recognized that the "apparent purpose of the amendment is to untether these newly protected efforts from the need to show that an FCA action is in the offing. Indeed, we and other circuits have recognized that the amended language broadens the scope of protected activity."  *United States ex rel. Buth v. Pharmerica Corp.,* 2014 U.S. Dist. 122719 at *25, 2014 WL 4355342 (E.D. WI Sep 3, 2014) (Congress broadened the statute and the amended language encompasses more protected activity than did the prior statute).  Efforts under the amendment

[4] The ordinary rule in federal courts is that an argument raised for the first time in a Reply Brief or memorandum will not be considered.  *Clawson v. FedEx Ground Package Sys.,* 451 F.Supp.2d 731, 734 (D. Md. 2006).

include "reporting suspected misconduct to supervisors." *Halasa v. ITT Educ. Servs.,* 690 F.3d 844, 847-48 (7th Cir. 2012), cited by *Eghrari -Sabet v. ENT, Allergy, & Asthma Ctr. PC,* 2020 U.S. Dist. LEXIS 30620 at *17-19, ftnt 7, 2020 WL 833083 (D. Md. Feb. 20, 2020) (plaintiff sent communications to Defendant regarding her concerns).  Observing possible violations and "[r]ais[ing] concerns" to management constitutes an "effort to stop" a potential FCA violation. *United States ex rel. Grant v. United Airlines, Inc.,* 912 F.3d at 202 (internal citation omitted); *Fitzsimmons v. Cardiology Assocs. of Fredricksburg, Ltd.,* 2015 WL 4937461, at * 6 (E.D. Va. Aug. 18, 2015) (conversations with employers that raise specific objections to fraud constitute protected activity).  Consequently, each of these disclosures from Ms. Edwards are considered "protected activity."

> ## 2.   Defendant knew about Ms. Edwards' protected activity.

Ms. Edwards must "plausibly aver" that MCVRC knew about her protected activity.  *United States ex rel. Potter v. CASA de Md.,* No. CV PX-16-0475, 2018 WL 1183659, at *8 (D. Md.) (Mar. 6, 2018).  This element is met when "the employee's words and acts are sufficiently suggestive of fraud or falsity such that the employer knew or should have known that FCA litigation was a reasonable possibility." *Id.*   However, using certain buzzwords is not necessary.  Instead, the notice requirement is fulfilled when Ms. Edwards uses language that, under the relevant circumstances and within the specific context in which the communications were made, puts an employer on reasonable notice that the employee is bringing to its attention conduct that qualifies as "protected activity." *Eberhardt v. Integrated Design & Const., Inc.,* 167 F.3d 861, 868 (1999).

Defendant does not contest that Ms. Edwards' disclosures were known and recognized by Defendant.  Motion at p. 11-12.  Indeed, Ms. Edwards alleges that she verbalized her concerns to Mr. Wolfgang and Ms. Tall on numerous occasions.  Complaint at ¶¶19, 24, 25, 26, 27, 29, 31, 33, 35.

3. **Ms. Edwards suffered adverse action as a result of her protected activity.**

Last, Ms. Edwards' complaint sufficiently alleges that Defendant took an adverse action against her as a result of her protected activity.

Defendant offers little regarding "adverse action."  Motion at p. 12.  Her last disclosure occurred on September 14, 2020 and she was terminated on September 18, 2020.  Compl. at ¶¶35, 48.  Additional disclosures occurred on September 11, 2020 (Compl. at ¶33), August 2020 (Compl. at ¶31), Summer 2020 (Compl. at ¶29), March 2020 (Compl. at ¶26), and ongoing since Spring 2020 (Compl. at ¶24).  Ms. Edwards' "termination, following close on the heels of [her] complaints, represents the ultimate action that an employer can take against a reasonable worker for whistleblowing."  *Grant,* 912 F.3d at 203 (*citing Sec'y of Labor v. Mut. Mining, Inc.,* 80 F.3d 110, 112 (4th Cir. 1996); *Eghrari-Sabet v. ENT, Allergy, and Asthma Center*, 2020 U.S. Dist. LEXIS 30620 at *6-7, 2020 WL 833083 (Feb. 20, 2020) (citations omitted).

Defendant does not contest that Ms. Edwards meets the "temporal proximity" for adverse action.  Moreover, "other relevant evidence may be used to establish causation.  Specifically, evidence of recurring retaliatory animus during the intervening period can be sufficient to satisfy the element of causation." *Lettieri v. Equant Inc.,* 478 F.3d 640, 650 (4th Cir. 2007).  In addition to the "ultimate action" of termination, **Mr. Wolfgang worked to minimize Ms. Edwards' experience, ability and participation at MCVRC.**  Compl. at ¶45.  Rather than meet with Ms. Edwards about MCVRC's finances and invoices, he contacted Kathleen Callan, a Caucasian staff attorney.  Compl. at ¶45.  Mr. Wolfgang regularly relied upon Pauline Mandel, MCVRC's Caucasian Director of Legal Services, to explain the particulars of Ms. Edwards' job and would call Ms. Mandel directly to discuss many issues but refused to speak to Ms. Edwards, even after Ms. Mandel told him to call Ms. Edwards.  Compl. at ¶45.  Mr. Wolfgang asked Ms. Owen to review the monthly profit and loss reconciliation reports – a role tasked to Ms. Edwards – and would not review these reports with Ms.

Edwards.  Compl. at ¶46.  Instead, he asked Ms. Callan.  Compl. at ¶46.  **Mr. Wolfgang did not provide Ms. Edwards with adequate workplace resources, but ensured that her Caucasian co-worker, Ms. Abell, was sufficiently staffed.**  Compl. at ¶47.  Each of these actions occurring through September 2020 "might well dissuade a reasonable worker" from whistleblowing and were retaliatory.

Accepting the facts alleged in the Complaint as true, it was objectively reasonable for Ms. Edwards to believe that MCVRC had committed, and would commit, fraud and she took "efforts to stop" a potential FCA violation.  *United States ex rel. Grant v. United Airlines, Inc., supra; Halasa v. ITT Educ. Servs., Inc.,* 690 F.3d 844, 848 (7th Cir. 2012) (finding a viable FCA retaliation claim where the complainant investigated suspected FCA violations and reported his findings "presumably to ensure that [the defendant] ended these practices and to prevent [it] from making any false certifications to the U.S. Department of Education").  Accepting the facts in the Complaint as true, a reasonable and objective inference can be made that MCVRC had notice of, and recognized, the severity of the disclosures made by Ms. Edwards and her efforts to stop potential FCA violations.  Accordingly, Ms. Edwards has stated a claim for retaliation under the False Claims Act and the Maryland False Claims Act.

**V.**   **Conclusion**

For the foregoing reasons, Plaintiff respectfully requests that Defendant's Motion to Dismiss be denied concerning Counts I-VI.

Respectfully submitted,


_____/s/  Marc Pasekoff_____
Marc E. Pasekoff, Esquire
SHANNON MULLINS & WRIGHT
124 S. Royal Street
Alexandria, Virginia 22314
Tel.: 571-620-1930
Fax: 571-321-6587
Email: mpasekoff@smw.law
*Counsel for Plaintiff*


## Certificate of Service

I HEREBY CERTIFY that on this 11th day of July, 2022, a copy of the foregoing was served via the Court's CM/ECF system to:

Brian A. Scotti, Esquire
Courtney R. Abbott, Esquire
GORDON REES SCULLY MANSUKHANI, LLP
1101 King Street, Suite 520
Alexandria, Virginia 22314
*Counsel for Defendant*


_____/s/_Marc Pasekoff_____
Marc E. Pasekoff