IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ERICA EDWARDS, | * | |
| Plaintiff, | * | |
| v. | * | Case No. TJS-22-1172 |
| MARYLAND CRIME VICTIMS' RESOURCE CENTER, INC. | * | |
| | * | |
| Defendant. | | |
| * * * * * * | | |

**MEMORANDUM OPINION**

Pending before the Court is Defendant Maryland Crime Victims' Resource Center, Inc.'s ("Center") Motion to Dismiss ("Motion") (ECF No. 9).[1] Having considered the submissions of the parties (ECF Nos. 9, 16 & 18), I find that a hearing is unnecessary. *See* Loc. R. 105.6. For the following reasons, the Motion will be granted in part and denied in part.

**I.     Background**

Plaintiff Erica Edwards ("Ms. Edwards") filed this lawsuit against the Center to recover for alleged race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (Count I); race discrimination in violation of 42 U.S.C. § 1981 (Count II); violation of the Maryland Human Rights Act, Md. Code, State Gov't § 20-601 *et seq.* (Count III); hostile work environment in violation of Title VII (Count IV); retaliation in violation of the False Claims Act, 31 U.S.C. § 3730(h) (Count V); retaliation in violation of the Maryland False Claims Act, Md. Code, Gen. Prov. § 8-107 (Count VI); and wrongful termination in violation of a clear mandate

---

[1] In accordance with 28 U.S.C. § 636(c), all parties have voluntarily consented to have the undersigned conduct all further proceedings in this case, including trial and entry of final judgment, and conduct all post-judgment proceedings, with direct review by the Fourth Circuit Court of Appeals, if an appeal is filed. ECF No. 14.

of public policy (Count VII). ECF No. 1. All claims arise from Ms. Edwards' tenure as the Center's Director of Finance and Operations and her termination from that position.

In its Motion, the Center argues that Ms. Edwards' case must be dismissed under Rule 12(b)(6) for failure to state claims upon which relief can be granted. ECF No. 9. The Motion is fully briefed and ripe for decision.

**II.    Legal Standard**

Rule 12(b)(6) permits a court to dismiss a complaint if it fails to "state a claim upon which relief can be granted." "The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint, [and not to] resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (internal quotation marks omitted). A complaint must consist of "more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). When considering a motion to dismiss, a court must accept as true the well-pled allegations of the complaint and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). While a court must take the facts in the light most favorable to the plaintiff, it "need not accept the legal conclusions drawn from the facts" and "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Markets, Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of

what the . . . claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint generally "does not need detailed factual allegations." *Id.* So long as the factual allegations are "enough to raise a right to relief above the speculative level," the complaint will be deemed sufficient. *Id.* A "well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable and that a recovery is very remote and unlikely." *Id.* at 556 (internal quotation marks omitted).

### III.   Discussion

#### A.   Factual Allegations

In considering the Motion, the Court accepts the factual allegations of the Complaint as true and construes all facts and reasonable inferences in the light most favorable to Ms. Edwards, the non-movant. Ms. Edwards, an African American woman, is a "well-established, respected member of the grant management community." ECF No. 1 ¶ 2. In August 2018, she was hired to act as the Center's Director of Finance and Operations. *Id.* ¶ 9. The Center's "source of revenue is overwhelmingly . . . secured through grant funding." *Id.* ¶ 14. Between 2016 and 2020, the Center received grants from the federal Victims of Crime Act ("VOCA") grant program, which is administered through the Maryland Governor's Office of Crime Control and Prevention. *Id.* ¶ 15. The VOCA grants awarded to the Center have rules about which costs are allowable and which are not. *Id.* ¶ 17. According to Ms. Edwards, Kurt Wolfgang ("Mr. Wolfgang"), the Interim Executive Director of the Center at all times relevant to the Complaint, violated the rules of the VOCA grants by engaging in "financial improprieties." *Id.* ¶ 19. Ms. Edwards "repeatedly" told Mr. Wolfgang that he was violating the terms of the grants. *Id.* He ignored her objections and "continue[d] to engage in improper actions." *Id.* ¶ 22. Ms. Edwards also reported Mr. Wolfgang's alleged violations (as well as improprieties by two white women, both employed at the Center and

3

friends of Mr. Wolfgang) to Debra Tall, the Chairperson of the Center's Board of Directors. *Id.* ¶¶ 24-31.

In September 2020, the conflict between Ms. Edwards and Mr. Wolfgang over the improprieties at the Center escalated. Mr. Wolfgang yelled at Ms. Edwards, accused her of "being disrespectful," and characterized her as a person who is "easily angered." *Id.* ¶¶ 34-37. Mr. Wolfgang "questioned [Ms. Edwards'] continued employment" given her disagreements with him, used an "irritated tone" with her, and acted combatively and with vocal disdain toward her. *Id.* ¶¶ 37-39, 42. Mr. Wolfgang also worked to "minimize Ms. Edwards' experience, ability, and participation" at the Center by turning to other employees for help and advice on issues within the domain of Ms. Edwards' position, and denying Ms. Edwards access to "adequate workplace resources." *Id.* ¶¶ 45-47. According to Ms. Edwards, Mr. Wolfgang treated her worse than he treated her white coworkers. *Id.*

At some point, Ms. Edwards learned of posts that Mr. Wolfgang made to the social media website Facebook. *Id.* ¶¶ 40-42. Mr. Wolfgang was aware of Ms. Edwards' "BLM support," but he made personal Facebook posts that "espoused racial hatred," and "endorsed anti-Black Lives Matter posts as well as racial/hostile comments." *Id.* There is no allegation that these posts were directed at Ms. Edwards or that they had anything to do with Mr. Wolfgang's professional activities at the Center.

During a time when Mr. Wolfgang and Ms. Edwards were interviewing candidates for open positions, Ms. Edwards heard Mr. Wolfgang tell a candidate that they should not move to Prince George's County or Charles County, but should consider moving to St. Mary's County or Calvert County. Ms. Edwards understood Mr. Wolfgang to mean that places like Waldorf (where she lives) are "unsafe because of the higher Black population." *Id.* ¶ 43. Ms. Edwards also heard Mr.

Wolfgang question whether another candidate could perform the job because the candidate spoke English as their second language. *Id.* ¶ 44.

On Friday, September 18, 2020, Mr. Wolfgang notified Ms. Edwards that her employment was terminated. *Id.* ¶ 48. He did not provide a reason. *Id.* No other directors at the Center were terminated. *Id.* Mr. Wolfgang replaced Ms. Edwards with an employee with "far less experience than Ms. Edwards." *Id.* ¶ 49. On at least one occasion, Mr. Wolfgang told an employee at the Center that Ms. Edwards had been "terminated for performance issues." *Id.* ¶ 50. According to Ms. Edwards, she had "never received a warning about any disciplinary or alleged performance issues," and her most recent performance audits (from December 2018) "found zero deficiencies." *Id.* ¶ 51.

### B.     Race Discrimination (Counts I, II, and III)

Ms. Edwards alleges three separate race discrimination claims against the Center: race discrimination in violation of Title VII (Count I), race discrimination in violation of 42 U.S.C. § 1981 (Count II), and race discrimination in violation of the Maryland Fair Employment Practices Act ("MFEPA") (Count III).

Under Title VII, it is unlawful for an employer "to discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

Section 1981 prohibits discrimination in employment on the basis of race. *Yashenko v. Harrah's NC Casino Co., LLC*, 446 F.3d 541, 551-52 (4th Cir. 2006). The "elements of a claim under section 1981 largely track the elements of a claim for race discrimination in employment under Title VII." *Sherman v. Marriott Hotel Servs., Inc.*, 317 F. Supp. 2d 609, 614 (D. Md. 2004) (citing *Gairola v. Commonwealth of Virginia Dep't of General Services*, 753 F.2d 1281, 1285 (4th Cir. 1985)).

The MFEPA "prohibit[s] discrimination in employment by any person." Md. Code, State Gov't § 20-602. This Court looks to cases interpreting Title VII for guidance in interpreting the MFEPA. *Ajisefinni v. CliftonLarsonAllen, LLP*, No. DLB-19-3284, 2022 WL 17082367, at *6 (D. Md. Nov. 18, 2022); *Wonasue v. Univ. of Maryland Alumni Ass'n*, 984 F. Supp. 2d 480, 487 (D. Md. 2013).

Ms. Edwards argues that the Motion should be denied as to Counts I, II, and III because she has stated plausible claims for race discrimination. ECF No. 16-1 at 6-10. She presents two legal theories to support her argument. First, she argues that she has presented direct evidence of race discrimination. *Id.* at 7. She points to Mr. Wolfgang's "discriminatory attitude" as "clearly reflected in his social media posts." *Id.* She argues that Mr. Wolfgang's discriminatory actions toward her were "consistent with his posts," and restates her allegations that Mr. Wolfgang minimized her abilities and performance in the workplace (something he did not do with her white colleagues). *Id.* These arguments are not persuasive. If Ms. Edwards was relying only on direct evidence to establish race discrimination, the Court would grant the Center's Motion. *See generally Cole v. Fam. Dollar Stores of Maryland, Inc.*, 811 F. App'x 168, 175 (4th Cir. 2020) ("Direct evidence is 'evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision.'" (quoting *Taylor v. Virginia Union Univ.*, 193 F.3d 219, 232 (4th Cir. 1999)). There is no evidence of a nexus between Mr. Wolfgang's racially charged social media posts and his conduct in the workplace—let alone his acts vis-à-vis Ms. Edwards' employment and ultimate termination. Without such a nexus, the Court cannot find that Mr. Wolfgang's alleged discriminatory attitude "bear[s] directly" on any employment decisions.

But Plaintiff presents another argument to support her claims for race discrimination: disparate treatment. She argues that her Complaint plausibly alleges that she belongs to a protected class because of her race, that she satisfactorily performed her job at the Center, that she suffered adverse employment actions (at the very least, termination), and that she was treated less favorably than similarly situated employees outside of her protected class. ECF No. 16-1 at 7-8.

The showing required to prove race discrimination based on disparate treatment is the same under Title VII, Section 1981, and the MFEPA. *See Lambert v. Savaseniorcare Admin. Servs., LLC*, No. DLB-20-2768, 2022 WL 3027993, at *13, 17-18 (D. Md. July 29, 2022) (citing *Gairola v. Va. Dep't of Gen. Servs.*, 753 F.2d 1281, 1285–86 (4th Cir. 1985)). "Disparate treatment occurs when an employer treats certain people less favorably than others on the basis of a protected classification such as race." *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 207 (4th Cir. 2019) (quoting *Carter v. Ball*, 33 F.3d 450, 456 n.7 (4th Cir. 1994)). To establish a prima facie case of disparate treatment, a plaintiff must show: (1) membership in a protected class; (2) satisfactory work performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class. *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010).

"In the context of a Title VII case, 'an employment discrimination plaintiff need not plead a prima facie case of discrimination' to survive a motion to dismiss." *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 616 (4th Cir. 2020) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515 (2002)). Instead, a Title VII plaintiff is "required to allege facts to satisfy the elements of a cause of action created by that statute." *Id.* (quoting *McCleary-Evans v. Maryland Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015)). "Nevertheless, the elements of a prima facie

case are a helpful guide in assessing the adequacy of the allegations." *Niner v. Garrett Cnty. Pub. Works*, No. ELH-17-2948, 2018 WL 3869748, at *16 (D. Md. Aug. 15, 2018).

The Center does not dispute that Ms. Edwards has plausibly alleged that she is a member of a protected class and that her employment was terminated.[2] *See* ECF No. 9-1 at 2. The Center, however, argues that Ms. Edwards does not plead a plausible race discrimination claim. It notes the dearth of allegations that show racial animus on the part of the Center or Mr. Wolfgang, and argues that there is no nexus between any adverse employment action and the alleged racial bias of the Center and Mr. Wolfgang. *Id.* at 6-7.

The Court finds that Ms. Edwards has presented plausible allegations of race discrimination. Ms. Edwards has alleged that she was terminated from her position as the Center's only Black director for no reason and that the newly-hired white employee who replaced her had far less experience. She alleges that in the months before her termination, Mr. Wolfgang made racially-charged social media posts in which he "equated Black Lives Matter with a domestic terror group, endorsed the use of guns in response to protests, equated protestors with 'welfare' recipients," and encouraged people to choose a side to fight in the "culture war." *See* ECF No. 1-1. According to the Complaint, Mr. Wolfgang was aware of Ms. Edwards' support for the Black Lives Matter movement. ECF No. 1 ¶ 41. And Ms. Edwards alleges that Mr. Wolfgang discriminated against her in the course of her employment (and otherwise made racist comments), consistent with the allegedly racist attitude he displayed in his social media posts. *See id.* ¶¶ 41-49; *see also McIver v. Bridgestone Americas, Inc.*, 42 F.4th 398, 413 (4th Cir. 2022) (Motz, J., concurring) ("[W]hen an African American woman asserts herself, she is often tagged by her

---

[2] The Court finds that Ms. Edwards has also plausibly alleged that she performed her job satisfactorily at all relevant times.

supervisors and coworkers as an 'angry Black woman,' a harmful and well-rooted racial stereotype."). The Court finds that the allegations in Ms. Edwards' Complaint are enough to nudge her claims over the line from conceivable to plausible. The Motion is thus denied as to Counts I, II, and III.

### C.   Hostile Work Environment (Count IV)

Ms. Edwards asserts a Title VII hostile work environment claim in Count IV. Title VII is violated "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victims' employment and create an abusive work environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal citations omitted). To establish a prima facie case of hostile work environment based on race, a plaintiff must prove (1) unwelcome conduct; (2) based on the plaintiff's race; (3) severe or pervasive enough to alter the plaintiff's conditions of employment and create an abusive work environment; and (4) that is imputable to the employer. *Okoli v. City of Baltimore*, 648 F.3d 216, 220 (4th Cir. 2011). "Conduct is 'unwelcome' when it continues after the employee sufficiently communicates that it is unwelcome." *Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 117-18 (4th Cir. 2021) (quoting *Albero v. City of Salisbury*, 422 F. Supp. 2d 549, 557-58 (D. Md. 2006)). "Establishing the third element requires that the plaintiff show that the work environment was not only subjectively hostile, but also objectively so." *Bonds v. Leavitt*, 629 F.3d 369, 385 (4th Cir. 2011). "To determine whether an environment is hostile, the Court must look at all the circumstances, which 'may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Roberts*, 998 F.3d at 117-18

9

(quoting *Harris*, 510 U.S. at 23); *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 276 (4th Cir. 2015).

The Center argues that Ms. Edwards' Complaint does not allege workplace conduct that is sufficiently severe or pervasive to support a plausible hostile work environment claim. ECF No. 9-2 at 7-10. In her response to the Motion, Ms. Edwards argues that, taken together, her allegations are enough to show a work environment sufficiently permeated with abusive conditions. She points to the following: Mr. Wolfgang, who was in charge at the Center, singled her out for racially discriminatory reasons. He demonstrated his racial animus on his Facebook account, where he made incendiary posts on racial issues during the Summer of 2020. At the time he did so, he knew that Ms. Edwards supported the very protestors and groups he was criticizing. And Mr. Wolfgang's ridicule was not limited to Black Lives Matter. He also criticized two majority-minority jurisdictions in Maryland and questioned whether a non-native English speaker could perform their job as well as a native speaker. When another Black employee wanted a raise, he rejected the request but readily handed a raise to a white employee "for additional work that she did not perform." *See* ECF No. 16-1 at 13. It was clear to Ms. Edwards that Mr. Wolfgang played favorites with employees based on their race. He supported white employees but denied Black employees like Ms. Edwards the resources they needed to perform their jobs. Ms. Edwards' characterizes Mr. Wolfgang's behavior as part of a "complex tapestry of discrimination." *Id.*

Ms. Edwards' allegations concerning her hostile work environment claim fall short of the "high bar" she must clear to satisfy the severe or pervasive test. *See E.E.O.C. v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008). Even accepting her allegations as true and viewing all inferences in the light most favorable to her, a reasonable person in Ms. Edwards' position would not have found the work environment objectively hostile or abusive under the standard required in

the Fourth Circuit. Mr. Wolfgang's conduct toward Ms. Edwards and his occasional comments that indirectly touched on racial issues were not frequent or severe; they were sporadic and spread over the course of her employment at the Center. There is no allegation that Mr. Wolfgang's inflammatory personal social media posts had anything to do with his work at the Center or his role as Ms. Edwards' supervisor. And although Mr. Wolfgang was Ms. Edwards' supervisor, his conduct was not physically threatening or objectively humiliating. And even if Mr. Wolfgang did not support Ms. Edwards in the manner that he supported other employees, there is no indication that this unreasonably interfered with Ms. Edwards' work performance.

Ms. Edwards and Mr. Wolfgang disagreed over the Center's operations. But even Mr. Wolfgang's interactions with Ms. Edwards in which he used a "combative" or "irritated tone," and even with his unfair descriptions of Ms. Edwards as "angry," are not enough to raise the severity of the conduct to what is required to sustain a hostile work environment claim. "[C]omplaints premised on nothing more than 'rude treatment by [coworkers],' 'callous behavior by [one's] superiors,', or 'a routine difference of opinion and personality conflict with [one's] supervisor,' are not actionable under Title VII." *Sunbelt Rentals*, 521 F.3d at 315-16 (internal citations omitted).

"Workplaces are not always harmonious locales, and even incidents that would objectively give rise to bruised or wounded feelings will not on that account satisfy the severe or pervasive standard." *Lambert, LLC*, 2022 WL 3027993, at *15 (quoting *Sunbelt Rentals*, 521 F.3d at 315). Other courts have rejected hostile work environment claims arising from more serious harassment than what Ms. Edwards complains of here. *See id.* (citing *Buchhagen v. ICF Int'l, Inc.*, 545 F. App'x 217, 219 (4th Cir. 2013) (unpublished) (per curiam) (affirming dismissal of hostile work environment claim when the plaintiff alleged a supervisor mockingly yelled at the plaintiff, yelled

11

and pounded her hands during a meeting, repeatedly criticized the plaintiff, made snide comments to the plaintiff, and unfairly scrutinized the plaintiff's compliance with directives); *Baqir v. Principi*, 434 F.3d 733, 747 (4th Cir. 2006) (holding "rude treatment" by colleagues, including one agitated interaction, was not severe or pervasive harassment); *Lubula v. Rex Healthcare, Inc.*, No. 5:13-CV-822-BO, 2015 WL 11120503, at *2 (E.D.N.C. Mar. 3, 2015), *aff'd sub nom. Lubula v. Rex Healthcare*, 620 F. App'x 207 (4th Cir. 2015) (unpublished) (granting summary judgment to defendants where the harassment complained of involved the use of foul language and false accusations); *Khoury v. Meserve*, 268 F. Supp. 2d 600, 614 (D. Md. 2003), *aff'd*, 85 F. App'x 960 (4th Cir. 2004) (unpublished) (granting summary judgment to employer where the employee complained of repeated criticism and an incident where a supervisor yelled at her, told her she was incompetent, pushed her down in her chair, and blocked the door)); *see also Holloway v. State*, 32 F.4th 293, 299-301 (4th Cir. 2022) (affirming dismissal of hostile work environment claim where supervisor undermined plaintiff's leadership, yelled at plaintiff during meetings, and required plaintiff to address him as "sir"); *Taylor v. Go-Getters, Inc.*, No. ELH-20-3624, 2021 WL 5840956, at *13 (D. Md. Dec. 9, 2021) (dismissing hostile work environment claim in which plaintiff alleged that his supervisor "'constantly' phoned him outside of work hours, reprimanded him for failing to perform his work-related duties, warned him that 'Black Males historically do not do well at Go-Getters,' failed to provide him with effective assistance, and made sarcastic comments" and collecting cases in which other courts have dismissed similarly non-severe claims); *Pounds v. Maryland Judiciary*, No. SAG-20-3379, 2021 WL 1751154, at *4–5 (D. Md. May 4, 2021) (dismissing hostile work environment claim in which the plaintiff's supervisor communicated in a "demeaning and belittling way, referring to Plaintiff as 'you people' and directing subordinates to closely scrutinize and target Plaintiff"). Because Ms. Edwards has failed

to allege acts sufficiently severe or pervasive to alter the conditions of her employment and to create an abusive work environment, the Center's Motion will be granted as to the hostile work environment claim (Count IV).

### D. False Claims Act Retaliation (Counts V and VI)

Ms. Edwards raises claims that the Center retaliated against her in violation of the federal False Claims Act ("FCA"), 31 U.S.C. § 3730(h) (Count V) and the Maryland False Claims Act ("MFCA"), Md. Code, Gen. Prov. § 8-107 (Count VI). "Because the MFCA and FCA are considered *in pari materia*, the Court treats the proposed claims together." *Simmons v. UM Cap. Region Health, Inc.*, No. PX-21-2074, 2022 WL 2065932, at *3 (D. Md. June 8, 2022) (citing *Gharib v. J. of Comm. on Political Econ. of Good Soc'y*, No. GJH-17-3476, 2018 WL 4679954, at *8 (D. Md. Sept. 27, 2018)). These statutes prohibit any person from presenting "a false or fraudulent claim for payment or approval" to the government. *United States ex rel. Grant v. United Airlines Inc.*, 912 F.3d 190, 196 (4th Cir. 2018) (quoting 31 U.S.C. § 3729(a)). "Employees who endeavor to stop false claims violations receive statutory protection from retaliatory adverse employment action." *Simmons*, 2022 WL 2065932, at *3. "Protected activity" includes an employee's efforts to prevent an FCA violation based on an "objectively reasonable" belief that the employer is violating or will soon violate the FCA. *Id.* Accordingly, to state a valid "§ 3730(h) retaliation claim and thus survive a motion to dismiss, a plaintiff must allege facts sufficient to support a 'reasonable inference' of three elements: (1) he engaged in protected activity; (2) his employer knew about the protected activity; and (3) his employer took adverse action against him as a result." *United Airlines Inc.*, 912 F.3d at 200.

In her Complaint, Ms. Edwards alleges that she engaged in protected activity under the FCA and MFCA by notifying Mr. Wolfgang and others at the Center of alleged violations of the

13

respective statutes, "including false claims for services not provided, submission of false records," and the presentation of false and fraudulent claims for payment. ECF No. 1 ¶¶ 78, 85. All of this protected activity, she alleges, was based on "an objectively reasonable belief that [the Center] was violating, or would soon violate," the FCA and MFCA. *Id.* ¶¶ 79, 86. She alleges that the Center knew of her protected activity (necessarily so: the protected activity consisted of her notifications of alleged illegal activity to Mr. Wolfgang and others at the Center). And she alleges that she was terminated from employment at the Center because she engaged in protected activity. *Id.* ¶¶ 80, 87.

The Center contends that Ms. Edwards' FCA and MFCA claims must be dismissed because her allegations of protected activity amount to "simply reporting concerns of mischarging the government to superiors," which "does not constitute protected activity under the [statutes'] retaliation provision[s]." ECF No. 9-1 at 11. This argument is meritless. Ms. Edwards made numerous specific allegations of wrongdoing (and perhaps fraudulent conduct) in connection with the Center's use of federal and state grant funding. *See* ECF No. 16-1 at 17-18 (summarizing relevant allegations of protected activity). And the timing of Ms. Edwards' protected activities and her termination are close enough to permit an inference that the Center retaliated against her.

Accepting the allegations as true, and viewing the facts and inferences in the light most favorable to her, Ms. Edwards' allegations are enough to allow her FCA and MFCA claims to proceed. Whether Ms. Edwards can ultimately prevail on these claims is irrelevant to the Court's consideration of the Center's Motion. Accordingly, the Center's Motion will be denied as to Counts V and VI.

### E.   Wrongful Termination (Count VII)

In Count VII, Ms. Edwards claims that she was wrongfully terminated, in violation of "a clear mandate of public policy." ECF No. 1 ¶ 89-90. This claim, apparently arising from Maryland common law, must be dismissed because "a wrongful discharge action will not lie where a remedy is available under 42 U.S.C. § 2000e–5 or its State counterparts." *Makovi v. Sherwin-Williams Co.*, 75 Md. App. 58, 65-66 (1988), *aff'd*, 316 Md. 603 (1989); *see also Garner v. Frederick Cnty. Pub. Sch.*, No. JMC-21-3253, 2022 WL 4290575, at *3 (D. Md. Sept. 16, 2022) ("Wrongful termination suits 'for employment discrimination are generally precluded because federal and Maryland anti-discrimination laws create a civil remedy to vindicate discrimination in employment settings.'" (quoting *Carson v. Giant Food, Inc.*, 187 F. Supp. 2d 462, 483 (D. Md. 2002)); *Smith v. Verizon Washington, DC*, No. PJM-11-1301, 2011 WL 5547996, at *5 (D. Md. Nov. 10, 2011) ("[T]o the extent Count VI attempts to assert a claim for the common law tort of wrongful discharge, this, too, cannot stand, as there is a specific statutory provision and remedy available to redress this claim."). Ms. Edwards does not address the Center's Motion to Dismiss this claim in her response. Accordingly, the Motion will be granted as to the wrongful termination claim (Count VII).

### IV.   Conclusion

For these reasons, the Defendant's Motion to Dismiss Plaintiff's Complaint (ECF No. 9) is **GRANTED IN PART and DENIED IN PART**. Plaintiff's claims for hostile work environment (Count IV) and wrongful termination (Count VII) are **DISMISSED**. The Motion is denied as to the other claims.

The Center shall answer the Complaint by **December 21, 2022**. Thereafter, the Court will issue a scheduling order. The parties should notify the Court promptly if they wish to be referred to another magistrate judge for an early settlement conference.

An accompanying Order follows.

December 7, 2022                                           /s/
Date                                              Timothy J. Sullivan
                                                  United States Magistrate Judge